1998 ND 70

**Kenneth J. GIETZEN, Plaintiff and Appellee,**

**v.**

**Vicki L. GIETZEN, Defendant and Appellant.**

**Civil No. 970292.**

Supreme Court of North Dakota.

March 30, 1998.

Monte L. Rogneby, Kapsner & Kapsner, Bismarck, for plaintiff and appellee.

Todd D. Kranda, Kelsch, Kelsch, Ruff & Kranda, Mandan, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Vicki Gietzen appeals from the trial court's order granting Ken Gietzen's motion for amended divorce judgment allowing a change of custody of the parties' son, Colter.[1] Vicki contends the trial court misapplied the two-step process for a change of custody determination. First, Vicki argues the trial court erred in finding the move from Bismarck to Coleharbor amounted to a significant and material change of circumstances. Second, Vicki argues the trial court erred in determining Colter was so adversely

---

1. The order from which Vicki Gietzen appeals directed counsel for Ken Gietzen to prepare an amended judgment consistent with the order. While the order itself, therefore, was not appealable, an appeal from such an order will be treated as an appeal from a subsequently entered consistent judgment. *Cf. Chapman v. Wells*, 557 N.W.2d 725, 728 n. 3 (N.D.1996). The record contains a subsequent consistent judgment entered October 2, 1997; therefore, the appeal is properly before us.

affected by the relocation as to compel a change of custody. We affirm.

[¶ 2] Ken and Vicki Gietzen were married June 22, 1981. Their son, Colter, was born in August 1983. The parties divorced in February 1984, stipulating Vicki would have primary physical custody of Colter.

[¶ 3] The relationship did not end with the divorce. The parties have lived together at least twice since their divorce, once for about two months, and most recently, in 1996 for about nine months. Both Ken and Vicki have been involved parents to Colter. Although Ken did not have custody, he had contact with Colter on nearly a daily basis. In the past, both Ken and Vicki were heavy drinkers. Vicki completed alcohol treatment in 1989 and currently attends AA meetings. Ken denies having a drinking problem, but admits to having had open containers in his vehicles while driving, boating, and hunting. Ken and Vicki's relationship was stormy, including one incident involving a butcher knife during which Vicki was violent and suicidal.

[¶ 4] Vicki and Colter moved out of Ken's home in September 1996 and moved in with Vicki's mother. Vicki had begun a relationship with another man, Terry Malnourie. While dating Malnourie, Vicki spent one or two nights a week at his home in Washburn. When Vicki was in Washburn, Colter stayed with Ken or with Vicki's mother.

[¶ 5] Vicki worked at Lowe's Garden Center in Bismarck, but was transferred to work at a Minot location when the Bismarck center closed. Vicki moved in with Malnourie in July of 1997 in Coleharbor. Vicki enrolled Colter in the Underwood school system. Ken moved for change of custody in August 1997. At the custody hearing, Colter testified he wanted to live with his father in Bismarck. Colter wanted to live in Bismarck so he could attend the same school, continue his friendships and participate in many extra-curricular and church activities not available to him in Coleharbor. One activity in particular that Colter would not be able to continue in is Tae Kwan Do. Colter has earned a black belt in Tae Kwan Do, wishes to continue this activity, and is unable to do so in Coleharbor.

[¶ 6] Vicki testified she took Colter to see a counselor prior to the custody hearing. Vicki testified, "I took him to see Brian Smith because [Colter] was quiet, withdrawn and not his normal, happy-go-lucky self.... [Colter] was silent, withdrawn, distant, just not himself."

[¶ 7] The trial court found Vicki's move to Coleharbor to live with Malnourie, requiring Colter to be enrolled in school in Underwood, was a significant change in circumstances. The trial court considered the applicable best interest factors in N.D.C.C. § 14–09–06.2 and found: (1) section (d), referring to the time the child has lived in a stable satisfactory environment favors Ken; (2) section (f), referring to the moral fitness of the parent slightly favors Ken; and, (3) section (i), the reasonable preference of the child favors Ken. The trial court found all other factors to be either inapplicable, neutral, or favoring neither party. The trial court found the change of circumstances required granting a change of custody. Vicki appeals.

[¶ 8] A trial court's modification of child custody is a finding of fact subject to the clearly erroneous standard of review. *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 5, 562 N.W.2d 390. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction a mistake has been make. *McDonough v. Murphy*, 539 N.W.2d 313, 316 (N.D.1995); Rule 52(a), N.D.R.Civ.P. When a party seeks to modify custody, the trial court applies a two-step process. *Mosbrucker*, 1997 ND 72, ¶ 6, 562 N.W.2d 390. First, the trial court must determine whether there has been a significant change of circumstances since the divorce and original custody determination. *Id.* at ¶ 6, 562 N.W.2d 390; *Barstad v. Barstad*, 499 N.W.2d 584, 587 (N.D.1993). Second, the trial court must determine whether the change compels or requires, in the best interests of the child, a change of custody. *Mosbrucker*, 1997 ND 72, ¶ 6, 562 N.W.2d 390; *Gould v. Miller*, 488 N.W.2d 42, 43 (N.D.1992).

[¶ 9] The trial court found there had been a significant change of circumstances. Specifically, the trial court found:

"When the parties divorced, they lived in Bismarck in close proximity to each other. Colter has attended Bismarck schools his entire life. He has friends in Bismarck and has been involved in many activities, most notably, Tae Kwan Do. Now Vicki has moved to Coleharbor. She lives with Mr. Malnourie. Colter is enrolled in school in Underwood. He says he has not made many friends yet in Underwood. Colter expressed a clear preference to stay in Bismarck. He said if his mother moved back to Bismarck, he would have no preference with whom he would live, but that he wants to live in Bismarck."

The trial court then weighed the best interest factors under N.D.C.C. § 14–09–06.2, and found the best interests of the child required a change in custody.

■■ [¶ 10] A significant change of circumstances may be created by the remarriage of a parent. *Mosbrucker*, 1997 ND 72, ¶ 9, 562 N.W.2d 390. Likewise, Vicki's move to live with Malnourie may be viewed as a significant change of circumstances. The preference of a mature child may be particularly significant to the trial court, both in determining whether there has been a significant change of circumstances and in determining the best interests of the child. *Id.* at

¶¶ 11–12, 562 N.W.2d 390. Colter is fourteen years of age. The trial court found him to be of sufficient intelligence, understanding, and experience to express a preference. Colter expressed a preference to live in Bismarck with his father. Colter was adversely affected by the move to Coleharbor. His mother testified to his being sullen, quiet, and withdrawn.

■ [¶ 11] The trial court is in a much better position to determine facts, properly limiting our review under the clearly erroneous standard. *Lovcik v. Ellingson*, 1997 ND 201, ¶ 14, 569 N.W.2d 697. We will not retry a case if reasonable evidence in the record supports the trial court's findings. *Id.* at ¶ 14, 569 N.W.2d 697. After reviewing the entire record, we are not left with a definite and firm conviction a mistake was made by the trial court. Given our standard of review, we conclude the trial court's findings are not clearly erroneous.

[¶ 12] The trial court's order and subsequent amended judgment are affirmed.

[¶ 13] VANDE WALLE, C.J., and MARING, SANDSTROM, and MESCHKE, JJ., concur.