1999 ND 23

**Darrell RAMSTAD, Plaintiff and Appellant,**

v.

**Jacqueline BIEWER, Defendant and Appellee.**

**Civil No. 980199**

Supreme Court of North Dakota.

Feb. 23, 1999.

Mark R. Fraase (argued) and Douglas W. Nesheim of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, N.D., for plaintiff and appellant.

Michelle L. Camilli (argued) and Timothy J. McLarnan of McLarnan, Hannaher, Vaa & Skatvold, Moorhead, Minn., for defendant and appellee.

NEUMANN, Justice.

[¶ 1.] Darrell Ramstad appeals from the district court's order and third amended judgment granting Jacqueline Biewer's motion to amend the divorce judgment allowing her custody of the parties' minor child. We affirm.

I

[¶ 2.] Darrell Ramstad and Jacqueline Biewer were divorced in 1984. The parties' relationship did not end with the divorce. In 1990, Biewer gave birth to a child. Ramstad is the father of the child.

[¶ 3.] In 1990, the district court entered judgment based on a stipulated agreement

between Ramstad and Biewer. The judgment gave the parties joint legal custody of the child, with Ramstad receiving physical custody.

[¶ 4.] In 1997, Ramstad and Biewer both moved to amend the 1990 judgment. Ramstad moved the district court to require Biewer to pay child support and pay half of any uninsured medical expenses. Biewer moved the district court for a change of custody awarding her physical custody of the child.

[¶ 5.] In September 1997, the district court entered an amended judgment directing Biewer to pay $282 per month in child support and to share any uninsured medical expenses equally with Ramstad.

[¶ 6.] In February 1998, the district court entered a second amended judgment granting Biewer's motion for change of custody. The second amended judgment gave Biewer physical custody of the child, authorized the child to live in Minnesota, and gave reasonable visitation rights to Ramstad. The district court found:

3. Plaintiff was awarded custody by the Judgment of the Court on August 14, 1990. There has been a substantial change in circumstances since the time of the original custody order.

4. The plaintiff is an alcoholic who has been in treatment at least two times. At the time of the original custody order, plaintiff was sober. Plaintiff admitted in his testimony that he is currently drinking. This is a change in circumstance. [The child] is living in a home with an alcoholic parent who is drinking. She has no one there to intervene if plaintiff's drinking gets out of control. This environment could be detrimental to [the child] physically and mentally.

5. Plaintiff was convicted for Driving Under the Influence in June, 1996. He was again convicted for Driving Under the Influence in February, 1997. He did not seek treatment after either of these convictions, and stated no intention or desire to stip [sic] drinking. His two DUI convictions within eight months show that he does not have his drinking under control. This demonstrates that the change in circumstances has been significant.

6. In February, 1997, the plaintiff beat [the child] with a wire brush. The beating left severe bruises on [the child's] bottom, as testified to by several witnesses, and as shown by a photograph of [the child's] bottom after the beating. This event may not rise to the level of criminal child abuse, but it is relevant to the issue of custody.

[¶ 7.] The district court also found Ramstad's home to be an unstable environment, found Biewer provided most of the child's material needs, found Ramstad does not cook for the child and relies on others to provide meals, and found Ramstad had committed one incident of domestic violence against Biewer in the child's presence. The district court weighed the factors under N.D.C.C. § 14–09–06.2 and found it in the best interests of the child to be in the physical custody of Biewer.

[¶ 8.] Shortly after entry of the second amended judgment, Ramstad moved to amend the findings of fact, the conclusions of law, and the judgment, or alternatively moved for a new trial. Ramstad argued the district court failed to apply the proper legal test for a change of custody and failed to consider evidence, or alternatively argued there was insufficient evidence to support the findings and conclusions. Biewer also brought a motion asking the court to amend its findings of fact and conclusions of law.

[¶ 9.] In May 1998, the district court issued a memorandum opinion and order denying Ramstad's motion and granting Biewer's counter-motion to amend. The district court amended two findings of fact:

7. In March and April of 1997, [the child] was doing so poorly in first grade that her teacher, Deborah Garrett, recommended that [the child] repeat the grade. [The child] also regularly complained to Ms. Garrett about headaches.

19. There have been significant changes in circumstances since the prior custody decree including the Plaintiff's two convictions for DUI or APC, the Defendant's [sic] continued use of alcohol,[1] the Plaintiff's beating of [the child] with a wire brush, and the incident of domestic violence by the Plaintiff against the Defendant. These changes have so adversely affected [the child] that she was doing poorly in school, regularly complained to her teacher of headaches, and asked to talk with the guidance counselor at school after telling Ms. Garrett about witnessing her father shove her mother up against the wall. In the opinion of this Court, [the child] has been so adversely affected by these significant changes that a modification in custody is necessary to foster her best interests.

The district court also amended the conclusions of law to provide:

Defendant has established, and the Court has found, that there has been a substantial change in circumstances since the original custody Order in 1990. These changes have so adversely affected [the child] that a change in custody is necessary to foster [the child's] best interests.

The district court entered a third amended judgment in conformance with this order. Ramstad appeals.

## II

[¶ 10.] A district court's decision to modify custody is a finding of fact subject to the clearly erroneous standard of review. *Gietzen v. Gietzen*, 1998 ND 70, ¶ 8, 575 N.W.2d 924; Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous only when it is induced by an erroneous view of the law, there is no evidence to support the decision, or if, although there is some evidence to support

the decision, on the entire evidence, we are left with a firm and definite conviction a mistake has been made. *Dinius v. Dinius*, 1997 ND 115, ¶ 12, 564 N.W.2d 300.

[¶ 11.] In an original proceeding to decide custody of a minor child, the district court need only decide the best interests and welfare of the child. *Id.* at ¶ 11, 564 N.W.2d 300. However, to modify child custody, the district court must apply a two-step analysis. *Gietzen*, 1998 ND 70, ¶ 8, 575 N.W.2d 924. The first step involves determining whether there has been a significant change of circumstances since the divorce and original custody determination. *Id.* at ¶ 11, 575 N.W.2d 924. In the second step, the district court must determine whether the change in circumstances compels or requires, in the best interests of the child, a change of custody. *Id.* at ¶ 8, 575 N.W.2d 924; *Dinius*, 1997 ND 115, ¶ 11, 564 N.W.2d 300; *Barstad v. Barstad*, 499 N.W.2d 584, 587 (N.D.1993).

[¶ 12.] Ramstad argues the district court applied the wrong law in awarding the custody change. He asserts the court initially treated the parties' motions to amend as an original custody determination by applying the statutory factors under N.D.C.C. § 14–09–06.2 to determine the child's best interests. If the court's decision had been based on such an incorrect view of the law, it would have been clearly erroneous. However, Ramstad moved the court to amend its findings, conclusions, and judgment, or in the alternative, for a new trial, and Biewer filed a counter-motion. The court issued a new memorandum opinion and order amending both its findings of fact and the conclusions of law of the second amended judgment, as shown above. In doing so, the court applied the proper legal test. *See, e.g., Ludwig v. Burchill*, 514 N.W.2d 674, 677 (N.D.1994) (noting that errors in the memorandum opinion were corrected in the second amended judgment). The district court was given a

---

1. After viewing the findings in their entirety, we believe the district court obviously meant to refer to the plaintiff's continued use of alcohol. In findings 4 and 5 the district court refers to the plaintiff's drinking, and in finding 12 the district court explicitly finds that the defendant does not drink or go out.

chance to correct itself under Rules 52 and 59, N.D.R.Civ.P., and it did so. Therefore, the district court applied the correct legal test.

[¶ 13.] Ramstad argues the district court did not apply the two-step test with the stability of the custodial parent as the primary consideration. We disagree.

[¶ 14.] As we have noted, the important factor in any change of custody proceeding is the stability of the child's relationship with the custodial parent. *Blotske v. Leidholm*, 487 N.W.2d 607, 609 (N.D.1992). Our caselaw reflects this preference by requiring a change in circumstances which compels or requires a change in custody. *Id.*

[¶ 15.] When a district court fails to apply the two-step test, the preference for stability is not recognized. In *Blotske*, we reversed the granting of a change of custody, noting the trial court:

> [U]nderestimated the impact of uprooting [the child] from her established custodial relationship and focused instead on the potential advantages of the non-custodial parent's home. The trial court, in effect, has misapplied the factor of continuity. It is the continuity of the custodial parent-child relationship that is critical, not the continuity of the [non-custodial] stepparent-child relationship.

*Id.* at 611 (citation omitted). Likewise, in *Orke v. Olson*, we reversed a change of custody determination because the district court focused on the stability of the non-custodial parent's home and the benefits the child would receive. *Orke v. Olson*, 411 N.W.2d 97, 100–01 (N.D.1987).

[¶ 16.] Here, the district court properly considered the stability of the child with the custodial parent. The findings focus on the child and her relationship with the custodial parent, Ramstad. The court has not changed custody because of any perceived benefits regarding the non-custodial parent. Rather, the court focused its findings on Ramstad's conduct and behavior. The district court properly applied the law, and by so doing, acted with the primacy of the continuing relationship with the custodial parent in mind.

[¶ 17.] Ramstad makes several arguments challenging the weight of the evidence, including an assertion the district court did not reconsider the weight of the evidence in making its decision on the motions to amend after the second amended judgment, and that the weight of the credible evidence is contrary to the court's findings.

[¶ 18.] "Rule 52(a), N.D.R.Civ.P., contemplates that trial courts, not appellate courts, find facts." *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 17, 562 N.W.2d 390, (Neumann, J., concurring and dissenting). We will not retry a case; if there is reasonable evidence in the record to support the district court's decision, we will affirm. *Gietzen*, 1998 ND 70, ¶ 11, 575 N.W.2d 924.

[¶ 19.] The district court made extensive findings. First, it found Ramstad was an alcoholic who had not been drinking when he was originally granted custody. The court also found Ramstad was currently drinking, had not indicated an intention to quit, and was abusing alcohol as evidenced by his DUI and APC convictions. The court found the child was living alone with an alcoholic parent, and would be at risk if Ramstad's drinking went out of control. While it was alleged there might be alcohol abuse by a person other than Biewer living in Biewer's home, the court expressly found Biewer herself does not drink. Apparently, the court believed the conditions in Biewer's home with a non-drinking parent presented a significantly safer alternative than a situation in which the child was living alone with an alcoholic parent who was currently abusing alcohol.

[¶ 20.] The district court also made factual findings regarding the child. The court found the child had experienced recurring headaches, and had difficulty at school resulting in the need to repeat a grade. In addition, the court noted in the findings the child

had requested to speak to a guidance counselor after witnessing Ramstad shove Biewer up against a wall.

[¶ 21.] The district court also found the child had been beaten by Ramstad with a wire brush, and found Ramstad had committed an act of domestic violence against Biewer. Although the "beating" may not have risen to the level of criminal conduct and the domestic violence did not give rise to a presumption against custody, their proximity to each other and to the proceeding makes them appropriate factors for consideration in the custody determination. While Ramstad testified he had merely "disciplined" the child, and there is nothing in the record other than photographs to support the district court's characterization as a beating rather than discipline, the characterization of the act does not change its relevancy in light of its proximity to the surrounding events and of the severity of the discipline administered.

[¶ 22.] Ramstad's assertions concerning what the actual evidence or the uncontroverted evidence shows are not convincing, particularly in light of the standard of review under Rule 52(a), N.D.R.Civ.P. This case was highly contested, both parties presented testimony and affidavits, which at times were diametrically opposed. The district court was in a better position to weigh the evidence than this Court. The district court has advantages we do not, including the opportunity to judge the credibility of witnesses by hearing and observing them, and to weigh the evidence as it is introduced, rather than from a cold record. *Ludwig v. Burchill*, 481 N.W.2d 464 (N.D.1992). In addition, as we have held, the mere fact that some of us might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court. *Id.* Based on the record, as a whole, the district court's findings are not clearly erroneous.

[¶ 23.] Ramstad argues, citing *Weber v. Weber*, 512 N.W.2d 723, 727 (N.D.1994), the district court's findings must be specific to the circumstances which affect the child, and

to apply a general premise to a specific case is illogical. Ramstad's reliance on the language in *Weber* takes that language out of context. In *Weber*, we noted any logical frailty in an expert's testimony would go to the weight to be given the evidence and not to its admissibility. *Id.* at 728. The issue presented in *Weber* is not before us in this case.

[¶ 24.] The district court's findings are supported by the record. Based on the record as a whole, we cannot say the district court erred in finding a significant change of circumstances requiring the custodial modification.

### III

[¶ 25.] The district court's order and third amended judgment are affirmed.

[¶ 26.] KAPSNER, J., concurs.

VANDE WALLE, Chief Justice, concurring in result.

[¶ 27.] I believe the trial court's findings adequately support the determination that the advantages which this Court has recognized adhere to a child from continuity and stability of living with a parent, *see, e.g., Blotske v. Leidholm*, 487 N.W.2d 607 (N.D. 1992), are, in this case, outweighed by the changes of circumstances so as to justify and support a change of custody. *Ludwig v. Burchill*, 514 N.W.2d 674 (N.D.1994). The requirement that the changes in circumstances necessary to support a change in custody must compel or require that change, expresses our position that because of the significance of stability in a child's life, the custody of that child is not to be changed as a result of every change in circumstances of the parents. We require a more rigorous standard to change custody, even if for the best interests of the child, then we do in awarding custody in the original proceeding.

[¶ 28.] Our prior rhetoric, about which I have voiced some misgivings, *Orke v. Olson*, 411 N.W.2d 97, 101 (N.D.1987) (VandeWalle,

J., concurring in the result), does not forbid a change of custody absent some catastrophic change of circumstances, rather, it increases the burden of proof necessary to a change of custody in the best interest of the child.

[¶ 29.] Because I agree that increased burden was met in this instance, I concur in the result.

[¶ 30.] Gerald W. VandeWalle, C.J.

MARING, Justice, dissenting.

[¶ 31.] I respectfully dissent. I am of the opinion that even the trial court's amended findings of fact and conclusions of law were induced by an erroneous view of the law, and I am also left with a definite and firm conviction a mistake has been made.

[¶ 32.] The trial court in its findings of fact, conclusions of law and order for entry of the second amended judgment clearly failed to apply the proper legal standard for determining a motion for change of custody. Therein the trial court concluded there had been a substantial change in circumstances since the original custody order. Once having reached this conclusion, the trial court applied the statutory factors in N.D.C.C. § 14–09–06.2 and concluded it would be in the best interests of the child physical custody be changed from her father to her mother. In doing so, the court treated this as if it were an original custody decision once it found a significant change in circumstances. In *Ludwig v. Burchill,* 514 N.W.2d 674, 675 (N.D.1994) (citations omitted), our Court set forth the applicable legal standard in a change of custody determination:

> [T]he trial court first must determine whether a significant change of circumstances has occurred since the prior custody decree, and if so, whether that change so adversely affects the child that it compels or requires a change in custody to foster the child's best interests.

Having had this correct legal standard called to its attention, the trial court ordered the amendment of its findings of fact and conclusions of law dated February 6, 1998, and the entry of a third amended judgement. The findings of fact, numbers 7 and 19, and conclusion of law II were amended. Specifically the trial court found the "two convictions for DUI or APC, the Defendant's [sic] continued use of alcohol,[2] the Plaintiff's beating of [the child] with a wire brush, and the incident of domestic violence by the Plaintiff against the Defendant" have "so adversely affected [the child] that a change in custody is necessary to foster [the child's] best interests."

[¶ 33.] The evidence in the record cited by the trial court to support this finding is that "[the child] was doing poorly in school, regularly complained to her teachers of headaches, and asked to talk with the guidance counselor at school after telling Ms. Garrett about witnessing her father shove her mother up against the wall." The record, however, is devoid of any evidence of a causal connection between Ramstad's conduct and the child's poor school performance or complaints of headaches. There was no expert testimony that Ramstad's conduct while drinking had a negative effect on the child, or that it interfered with his parenting responsibilities. There was no testimony Ramstad's drinking interfered with his caring for the child's emotional, physical, and mental needs, other than he had lost his license to drive for one year. While it is true the child's school performance was poor during the 1996–97 school year, the uncontroverted evidence was that Ramstad enrolled the child in summer school and her teacher, Debbie Garrett, testified she saw a remarkable improvement in the child in the fall of 1997 as compared to the prior school year. Ms. Garrett also stated in her October 13, 1997, affidavit, the child was doing "remarkably well and is a happy, well adjusted little girl." The child was in Ramstad's custody during the Fall of 1997.

[¶ 34.] The only adverse effects, therefore, supported by the record were the one incident of domestic abuse against Biewer which resulted in the child talking to a guidance counselor at school and the one incident of

---

2. I agree with the majority the district court

meant to refer here to Ramstad and not Biewer.

spanking which resulted in the child's bruised bottom. These are isolated incidents, and there is no evidence this child suffered from any pattern of abusive conduct. The trial court, in its attempt to apply the proper legal standard, failed to correctly analyze, however, whether the change of circumstances "requires" or "compels" a change of custody "in the context of the recognized overriding benefit in maintaining the stability and continuity of the custodial parent-child relationship." *See Ludwig v. Burchill,* 481 N.W.2d 464, 470 (N.D.1992) (Levine, J., specially concurring).

[¶ 35.] I agree with Chief Justice Vande-Walle's concurrence to the extent that it points out our standard for a change of custody "does not forbid a change of custody absent some catastrophic change of circumstances, rather, it increases the burden of proof necessary to a change of custody in the best interest of the child." However, I cannot find the evidence in this record to meet this increased burden in light of the significance of the continuous seven-year relationship between Ramstad and his daughter, who was described by her teacher as a "happy, well adjusted little girl" at the time this matter was heard by the trial court. As Justice Levine stated in her special concurrence in *Ludwig I,* 481 N.W.2d at 469: "It is not every significant change in circumstances that warrants a change in custody." In *Delzer v. Winn,* 491 N.W.2d 741, 744 (N.D.1992), we emphasized the maintenance of custodial stability and continuity "is a very compelling consideration" against which the other best interest factors must be gauged.

[¶ 36.] In conclusion, although the trial court makes an express finding the change of circumstances in this case so adversely affected the child that a change of custody is required and necessitated, I am left with a firm conviction the court's original error of law influenced the amended findings of fact and conclusions of law and the third amended judgment because they contain only a recitation of the necessary magic words without a basis in the evidentiary record to support them. *Cf. Benson v. Benson,* 495 N.W.2d 72,

78 (N.D.1993) ("[A] trial court must specifically state subordinate facts upon which its ultimate factual conclusions rest."). Something more is required than simply to find a significant change in circumstances, here drinking, justifies a change in custody. I do not agree that merely establishing that a custodial parent drinks inferentially establishes such conduct impairs that parent's ability to parent and has an adverse effect on the child without some additional evidence to support these findings.

[¶ 37.] I believe the evidence, viewed in its most favorable light, is insufficient as a matter of law to support the trial court's finding Ramstad's conduct so adversely affected the child that the presumption in favor of maintaining the custody of a happy child with the custodial parent of over seven years is overcome. *See Delzer,* 491 N.W.2d at 747 (Levine, J., specially concurring) (stating "Translated into evidentiary language, there is a presumption in favor of maintaining the custody of a happy child with the custodial parent."). I would reverse the second and third amended judgment.

[¶ 38.] SANDSTROM, J., concurs.