# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 186

Nicole M. Kunz
f/k/a Nicole M. Slappy,                    Plaintiff, Appellant, and Cross-Appellee

v.

Jermece Slappy,                    Defendant, Appellee, and Cross-Appellant

and

State of North Dakota,                    Real Party in Interest

## No. 20200352

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Cynthia Feland, Judge.

REVERSED.

Opinion of the Court by Jensen, Chief Justice.

Rodney E. Pagel, Bismarck, ND, for plaintiff, appellant, and cross-appellee.

Aaron D. Pulanco (argued) and Joshua L. Weatherspoon (on brief), Bismarck, ND, for defendant, appellee, and cross-appellant.

**Jensen, Chief Justice.**

[¶1]   Nicole Slappy, now known as Nicole Kunz, appeals from a third amended judgment modifying her primary residential responsibility for the parties' minor child, M.S., and granting Jermece Slappy equal residential responsibility. Kunz argues the district court erred in finding a material change in circumstances, erred in modifying the existing residential responsibility in the absence of a general decline in the child's condition, and erred in its analysis of the best interest factors. Slappy cross-appeals, arguing the district court improperly calculated his child support obligation. We reverse.

I

[¶2]   Kunz and Slappy were divorced in 2013 and are the parents of one child. At the time of their divorce, the parties agreed Kunz would have primary residential responsibility of the parties' child. The initial residential responsibility arrangement has not previously been amended and the pending proceedings are the first request to modify the existing arrangement.

[¶3] In May 2020, Slappy moved to modify the existing residential responsibility seeking a change in primary residential responsibility to establish equal parenting time. Kunz did not respond and the district court found Slappy had established a prima facie case for modification of primary residential responsibility. An evidentiary hearing on the motion for modification of parenting responsibility was held in September 2020.

[¶4]   Following the evidentiary hearing, the district court found changes to Slappy's work schedule allowing him to spend more parenting time with M.S. was a material change of circumstances. Although the court did not decide whether the parties had been exercising equal parenting time as asserted by Slappy, the court did find Slappy's exercise of "substantially more parenting time" than included within the existing parenting time schedule supported a finding of a material change in circumstances. The court did not make any

findings indicating the change in circumstances had adversely affected the child or indicating there had been a general decline in the child's condition.

[¶5] Having determined a material change in circumstances had occurred, the district court weighed the best interest factors provided by N.D.C.C. § 14-09-06.2, finding two factors favored Kunz and two factors favored Slappy. The remaining factors were found not to apply or were weighed evenly by the court. Based on its findings on the individual factors, the court found "the factors balance in favor of awarding the parties equal residential responsibility." The court granted Slappy's motion to modify the existing arrangement, and ordered equal residential responsibility for the child.

[¶6] The district court's order granting the modification of the existing residential responsibility left open the issue of child support. The court requested the parties attempt to agree upon the appropriate amount of child support and, if unable to agree, submit calculations consistent with equal residential responsibility.

[¶7] The parties were unable to agree on the appropriate amount of child support. After the submission of proposed child support calculations which included financial information not previously offered during the evidentiary hearing, the district court entered an order for child support. The court's computation of the child support obligation included references to financial information provided to the court after the evidentiary hearing, did not include other potentially relevant financial information provided after the evidentiary hearing, and relied in part on Slappy's testimony about his self-employment income provided during the evidentiary hearing.

II

[¶8] A district court's decision to grant or deny a motion for a change of residential responsibility is subject to a clearly erroneous standard of review. *Krueger v. Tran*, 2012 ND 227, ¶ 11, 822 N.W.2d 44 (citing *Stanhope v. Phillips-Stanhope*, 2008 ND 61, ¶ 7, 747 N.W.2d 79). "A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it,

or we are convinced, based on the entire record, that a mistake has been made." *Krueger*, at ¶ 11 (citing *Stanhope*, at ¶ 7).

[¶9] The district court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:

    a.    On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

    b.    The modification is necessary to serve the best interests of the child.

N.D.C.C. § 14-09-06.6(6).

### III

[¶10] Section 14-09-06.6(6)(a) requires the district court to find a material change in circumstances prior to modifying primary residential responsibility. Kunz argues the court erred in finding that a material change in circumstances had occurred as a result of changes to the parties' work schedules and the increase in the amount of parenting time being exercised by Slappy. Kunz argues that although Slappy's work schedule was now more favorable to exercising parenting time than it was at the time of divorce, her own schedule changes were even more favorable to establishing a stable parenting schedule for M.S. She also argues Slappy "had the duty to prove that he had parenting time on 50% of more of the overnights." Kunz urges this Court to adopt a standard "that in the context of motions to change residential responsibility, the change in the parenting time schedule must be such that equal or primary residential responsibility has also changed."

[¶11] This Court has recognized a change in a work schedule increasing the time the parent without primary residential responsibility has available to exercise parenting time can be a material change in circumstances. *Ritter v. Ritter*, 2016 ND 16, ¶¶ 9-10, 873 N.W.2d 899. In *Ritter*, we recognized a moving party could establish a material change in circumstances where their new

employment results in a significant increase in their ability to care for a child. *Id*.

[¶12] While a minor variance from an existing parenting schedule is insufficient to establish a material change in circumstances, substantial variances can support a finding of a material change in circumstances. *Ehli v. Joyce*, 2010 ND 199, ¶¶ 9-10, 789 N.W.2d 560. In the context of remanding a case for the purpose of calculating an appropriate child support obligation where the existing judgment established equal residential responsibility, this Court noted the following: "If the trial court finds a significant change in circumstances, for example, that the parties' current custodial arrangements are substantially different than contemplated in the divorce decree, then the divorce judgment's custody provision must be amended . . . ." *Boumont v. Boumont*, 2005 ND 20, ¶ 17, 691 N.W.2d 278.

[¶13] When the parties originally stipulated to Kunz having primary residential responsibility, Slappy was working in the oil industry in western North Dakota and was often unavailable to provide parenting time. At the time of the evidentiary hearing, Slappy had changed his employment and increased the time he was available to parent the parties' child. Slappy has taken advantage of the increase in available time and exercised more parenting time with M.S. The district court specifically found Slappy "has exercised substantially more parenting time than provided by the Judgment."

[¶14] The district court referenced both Slappy's increased available time and the increase in his actual parenting time. The court recognized the change in Slappy's work schedule "coupled with not only his ability but his actual exercise of substantially more parenting time, constitutes a material change in circumstances warranting consideration of a change in residential responsibility." The court did not err in recognizing the combination of increased available time to parent coupled with an actual increase in parenting time could be a material change in circumstances as required by N.D.C.C. § 14-09-06.6(6)(a). We decline the request to adopt the standard "that in the context of motions to change residential responsibility, the change in the parenting time schedule must be such that equal or primary residential

4

responsibility has also changed." However, as discussed in section IV, the ultimate finding there had been a change necessitating a modification of the existing primary residential responsibility for the best interests of the child was made under an erroneous view of the law and is clearly erroneous.

IV

[¶15] Section 14-09-06.6(6)(b) requires the district court to find the material change in circumstances necessitates modification of primary residential responsibility for the best interests of the children. Kunz argues the court erred in modifying the existing residential responsibility in the absence of a finding there has been a general decline in the condition of the child. On appeal, Slappy does not argue the general condition of the child has declined, and he has not challenged the court's finding the child "is a healthy eight (8) year old succeeding in school, sports and other extra-curricular activities and interests."

A

[¶16] This Court has previously recognized that a motion to modify primary residential responsibility requires a different analysis than an original custody proceeding. *Hill v. Weber*, 1999 ND 74, ¶ 8, 592 N.W.2d 585; *Hagel v. Hagel*, 512 N.W.2d 465, 467 (N.D. 1994). When making an initial determination, the trial court is concerned only with the best interests and welfare of the child. *See Dalin v. Dalin*, 512 N.W.2d 685, 687 (N.D. 1994); *Gould v. Miller*, 488 N.W.2d 42, 43 (N.D. 1992). In contrast, this Court has expressly recognized a modification of an existing allocation of residential responsibility requires a two-stage analysis as described in the following paragraphs.

[¶17] Prior to 1997, this Court had established the following two-stage analysis for reviewing a motion to modify primary residential responsibility: (1) Has there been a significant change of circumstances since the prior residential responsibility determination? (2) Has the change of circumstances so adversely affected the child that it compels a change in custody to foster the child's best interests? *Hill*, 1999 ND 74, ¶ 8; *Alvarez v. Carlson*, 524 N.W.2d 584, 588-89 (N.D. 1994); *Hagel*, 512 N.W.2d at 467. With references to *Delzer*

*v. Winn*, 491 N.W.2d 741, 744 (N.D. 1992), and *Blotske v. Leidholm*, 487 N.W.2d 607, 609 (N.D. 1992), this Court stated "the change of circumstances must be one that adversely affects the child." *Alvarez*, 524 N.W.2d at 589. In *Delzer*, we noted the following:

> This is not the first time we have faced a situation where the non-custodial parent has rehabilitated his or her life and sought modification of custody based, at least partially, on those improved personal circumstances. In the past, we have not been persuaded that this alone is sufficient to upset the continuity and stability of the child's life. We normally insist that the change in circumstances weigh against the best interests of the child before we will approve a change in custody.

*Delzer*, 491 N.W.2d at 744.

[¶18] Our law on modification of custody was codified as of August 1, 1997. N.D.C.C. § 14-09-06.6. For purposes of this appeal, a motion for modification of primary residential responsibility two or more years from the order establishing the existing arrangement, N.D.C.C. § 14-09-06.6(6) controls. Section 14-09-06.6(6) reads as follows:

> 6.  The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:
>     a.  On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>     b.  The modification is necessary to serve the best interests of the child.

[¶19] This Court has acknowledged the codified formulation of the law for cases beginning August 1, 1997. *Hill*, 1999 ND 74, ¶ 9. Specifically, the Court noted the following:

> This formulation replaces our previous formulation for cases decided August 1, 1997, and after. Although the legislative history

6

reflects the statute was generally intended to codify our case law, *see Hearing on S.B. 2167 Before the Senate Judiciary Committee*, 55th N.D. Legis. Sess. (Jan. 21, 1997) (testimony of Sherry Mills Moore, Bismarck attorney), it contains some nuances we have not previously stated, and addresses some fact situations we have not previously addressed. Where the letter of the law is clear, we need not look further than the statutory language. N.D.C.C. § 1-02-05; *Jones v. Billings County School Dist. # 1,* 1997 ND 173, ¶ 11, 568 N.W.2d 477; *Adams County Record v. Greater North Dakota Ass'n*, 529 N.W.2d 830 (N.D. 1995). Where the provisions of the statute differ from previous case law, the statute prevails. N.D.C.C. § 1-01-06; *see also Cermak v. Cermak*, 1997 ND 187, ¶ 9, 569 N.W.2d 280.

[¶20] In *Kelly v. Kelly*, this Court interpreted the legislature's use of the term "necessary" in N.D.C.C. § 14-09-06.6(6)(b) as a codification of the second step of this Court's prior two-step inquiry requiring the change of circumstances so adversely affected the child that it compels a change in custody to foster the child's best interests. 2002 ND 37, ¶ 16, 640 N.W.2d 38. In *Kelly*, this Court noted the following:

> As we have stated, the use of "necessary" in the codification of the second step of the two-step test did not signal a departure from the standard embodied in our case law. *Holtz v. Holtz*, 1999 ND 105, ¶ 10, 595 N.W.2d 1 ("This part of the statutory formulation essentially tracks the two-step approach previously used by this Court for deciding a change of custody case.") Since N.D.C.C. § 14-09-06.6(6) became effective, we have continued to reference our prior case law, and we have sometimes substituted "require" or "compel" for the statutory language of "necessary" when reciting the second step of the test. *See, e.g.*, *Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564; *Mayo v. Mayo*, 2000 ND 204, ¶ 14, 619 N.W.2d 631; *O'Neill v. O'Neill*, 2000 ND 200, ¶ 4, 619 N.W.2d 855; *Anderson v. Resler*, 2000 ND 183, ¶ 8, 618 N.W.2d 480; *In re K.M.G.*, 2000 ND 50, ¶ 4, 607 N.W.2d 248; *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 16, 603 N.W.2d 896; *Myers v. Myers*, 1999 ND 194, ¶ 6, 601 N.W.2d 264; *Holtz v. Holtz*, 1999 ND 105, ¶¶ 9-10, 595 N.W.2d 1; *Ramstad v. Biewer*, 1999 ND 23, ¶ 11, 589 N.W.2d 905; *Gietzen v. Gietzen*, 1998 ND 70, ¶ 8, 575 N.W.2d 924.

*Id.*

[¶21] This Court has recently reiterated the need to show how the material change in circumstances adversely affect the child, even in the initial prima facie showing necessary to secure an evidentiary hearing. *Johnshoy v. Johnshoy*, 2021 ND 108, ¶ 9, 961 N.W.2d 282 (citing *Schroeder v. Schroeder*, 2014 ND 106, ¶ 7, 846 N.W.2d 716). In *Johnshoy* we expressly stated that a modification of the existing residential responsibility requires "a showing that the change in circumstances has adversely affected the children." *Johnshoy*, at ¶ 9. In affirming a decision not to grant a moving party an evidentiary hearing on a motion to modify residential responsibility, we also noted the following regarding the need for the moving party to show there has been a decline in the condition of the children:

> "[T]o establish a prima facie case that modification is necessary to serve the best interests of the children requires more than the improved circumstances of the party moving to modify primary residential responsibility." *Schroeder*, 2014 ND 106, ¶ 21, 846 N.W.2d 716. Fry's affidavit does not provide facts showing how the change in circumstances has affected the children. She has not provided evidence that the children have suffered physical or emotional harm. She has provided no evidence that the change in circumstances has prevented Johnshoy from providing the children with nurture, love, affection, and guidance. She does not allege that the children's developmental or educational needs are not being met by Johnshoy. While Fry has provided facts, which if proved, would show an improvement in her situation, she has not provided facts that would show a decline in the condition of the children with Johnshoy over the same period. Fry's affidavit fails to show how a change in custody is necessary to serve the best interests of the children and thus fails to establish a prima facie case for modification of primary residential responsibility.

*Id*. at ¶ 13. Our decision in *Johnshoy* makes direct references to both the requirement for "a showing that the change in circumstances has adversely affected the children" and, in circumstances where the parent without primary residential responsibility seeks modification based on improvement in their

8

life, the requirement for "a decline in the condition of the children[.]" *Id*. at ¶¶ 9 and 13.

[¶22] In 2006 this Court, while rejecting the requirement for the child to be adversely affected in the special circumstances of equal residential responsibility coupled with a request to relocate out of state, recognized "[i]n some contexts, this Court has said a court must consider whether a change in circumstances so adversely affected the child's best interests that a custodial change is required." *Dunn v. Dunn*, 2009 ND 193, ¶¶ 7, 10, 775 N.W.2d 486. Additionally, since the 1997 codification this Court has held that improvements in the life of a parent without primary residential responsibility does not constitute a material change in circumstances unless there has also been a general decline in the condition of the child. *See e.g.*, *Valeu v. Strube*, 2018 ND 30, ¶ 18, 905 N.W.2d 728. Through our case law, we have expanded the requirement to demonstrate the change in circumstances so adversely affected the child's best interests that a custodial change is required to include circumstances where there has been a general decline in the condition of the child.

B

[¶23] In the case at hand, the district court modified residential responsibility relying on this Court's decisions in *Ritter* and *Ehli*. In *Ritter*, the district court had denied the moving party's request for an evidentiary hearing after finding the following: "although a change in a parent's work schedule may be a material change in circumstances sufficient to modify visitation, it does not, without more, meet the definition of a material change in circumstances sufficient to modify primary residential responsibility." *Id*. at ¶ 9. This Court disagreed, reversed the district court, and remanded the case for an evidentiary hearing. *Id*. Our decision in *Ritter* answered the specific question raised by the appellant, whether a change in a parent's work schedule may be a material change in circumstances. In *Ritter,* this Court was not asked to consider, and the opinion does not address, whether a change in primary residential responsibility requires a change in circumstances coupled with

either a general decline in the condition of the child or that the child has been adversely affected by the change.

[¶24] In *Ehli*, this Court reversed the denial of an evidentiary hearing after concluding a substantial deviation from an existing equal primary residential responsibility arrangement was sufficient to demonstrate a prima facie change in circumstances warranting modification of primary residential responsibility. 2010 ND 199. In *Ehli*, like *Ritter*, this Court was not asked to consider, and the opinion does not address, whether a change in primary residential responsibility requires a change in circumstances coupled with either a general decline in the condition of the child or that the child has been adversely affected by the change.

[¶25] In our 2021 holding in *Johnshoy*, this Court affirmed the denial of an evidentiary hearing when the moving party failed to show that the change in circumstances had adversely affected the child or that there had been a general decline in the condition of the children. *Johnshoy*, 2021 ND 108, ¶¶ 9-13. As noted above, in *Johnshoy* the moving party's affidavits showed improvement in their life, but the evidentiary hearing was held to have been properly denied because the affidavits failed to show how the child was adversely affected or a general decline in the child's condition. *Id.* at ¶ 13.

C

[¶26] Our decisions in *Ehli* and *Ritter* did not eliminate the need for a party seeking to change primary residential responsibility to establish both a material change in circumstances and either a general decline in the condition of the child or that the change has adversely affected the child. Our decision in *Johnshoy* confirms the continued need to satisfy both subpart (a) and subpart (b) of N.D.C.C. § 14-09-06.6(6).

[¶27] Slappy's allegations of a material change in circumstances were limited to a change in his work schedule allowing him to be able to exercise more parenting time and his actual exercise of more parenting time. Slappy did not allege the changes had adversely affected the child or that there had been a general decline in the child's condition. Slappy did not challenge the district

10

court's finding the child "is a healthy eight (8) year old succeeding in school, sports and other extra-curricular activities and interests."

[¶28] This Court has concluded the requirement that the change of circumstances so adversely affected the child that it compels a change in custody to foster the child's best interests was incorporated within subpart (b) of N.D.C.C. § 14-09-06.6(6), the legislature's formulation of the modification of an existing primary residential responsibility arrangement. In the context of improvements to the life of the parent seeking modification, we have determined a general decline in the condition of the child coupled with the finding a change is in the best interests of the child satisfies subpart (b) of N.D.C.C. § 14-09-06.6(6). The district court's finding that it was in the child's best interests to modify the existing residential responsibility without a finding the changed circumstances had an adverse effect on the child, or that there had been a general decline in the child's condition, was induced by an erroneous view of the law, and we conclude the finding was clearly erroneous. The court's order modifying the existing residential responsibility is reversed.

V

[¶29] The district court erred in modifying the existing residential responsibility without evidence of the child having been adversely affected or evidence of a general decline in the condition of the child. The court's third amended judgment is reversed. In light of our decision on primary residential responsibility and the reversal of the third amended judgment, it is unnecessary to resolve the remaining issues raised by the parties on appeal.

[¶30] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

I concur in the result.
Gerald W. VandeWalle

11