2000 ND 147

**Alexander Nickita TULINTSEFF, Plaintiff and Appellee,**

v.

**Lynda Marie JACOBSEN, Defendant and Appellant.**

**No. 20000029.**

Supreme Court of North Dakota.

July 20, 2000.

Shane C. Goettle, McGee, Hankla, Backes & Dobrovolny, Minot, for plaintiff and appellee.

Gary H. Lee, Olson Burns Lee, Minot, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Lynda Jacobsen appeals from the trial court's amended judgment awarding custody of her and Alexander Tulintseff's two children to Tulintseff and from an order denying her motion for a new hearing and for amendment of the amended judgment. We hold the court did not clearly err in finding there is not sufficient evidence to trigger the presumption against awarding custody to a perpetrator of domestic violence under N.D.C.C. § 14-09-06.2(1)(j). We affirm.

I

[¶ 2] Jacobsen and Tulintseff married in July 1993. During their marriage, Tulintseff was a captain in the United States Air Force and Jacobsen at times worked outside the home. They had two children, Alexandra born on February 27, 1994, and Nickita born on July 26, 1995.

[¶ 3] In late May 1996, the parties entered a divorce stipulation. Jacobsen, who was unrepresented, signed the stipulation, indicating she was aware Tulintseff's attorneys drafted the stipulation and she had the right to seek the opinion of an independent attorney. On May 31, 1996, a divorce judgment was entered upon the parties' stipulation. It provided the parties "shall have joint physical custody ... with each party having primary physical custody one-half of the time until Alexandra becomes school aged, at which time the parties shall decide who shall have primary physical custody of the minor children."

[¶ 4] After the divorce, the parties lived together for approximately two weeks. For almost the next three years, the parties adhered to the custody arrangement provided for in the judgment. Tulintseff resigned from the Air Force in March 1999.

[¶ 5] On April 22, 1999, Jacobsen filed a motion to amend the judgment, seeking, in part, sole custody of the children. She alleged, "[a]lthough no domestic violence has occurred since the time of the divorce, prior to that time, [Tulintseff] both physically and verbally assaulted [her] on a regular basis." She asserted "[Tulintseff] constantly instilled fear in [her], which ul-

timately lead [sic][her] into signing off on the divorce Stipulation under extreme duress, to avoid further assaults." Tulintseff opposed Jacobsen's motion, moving the court to award custody to him.

[¶ 6] Following a hearing, the trial court entered an amended judgment on October 1, 1999, awarding custody to Tulintseff. The court noted that, after the divorce stipulation was signed, Tulintseff and Jacobsen went out for a drink, and Jacobsen lived with Tulintseff and their two children from the date of the divorce until June 15, 1996, when Tulintseff received a military transfer. The court considered the best interests of the children under N.D.C.C. § 14–09–06.2(1). The court found all the factors under N.D.C.C. § 14–09–06.2(1), except domestic violence, favored Tulintseff, were equal, or were not applicable. Regarding domestic violence, the court found:

> There was evidence of domestic violence and outbursts of fits of anger but the Plaintiff has taken steps to correct that. There was testimony that he handles his children very well and in a very loving manner and temper is not involved. No dangerous weapons were ever used by these parties and there was no serious bodily injury. They each threw things at the other and had a very busy social life. The Defendant testified that during the marriage the Plaintiff 'would go off on me' and he was volatile. She left the family home on one occasion, retreating to her mother's home where she stayed for three weeks. She testified the Plaintiff had broken two chairs, a dining room table and a cutting board. Both agreed that the Plaintiff went to an anger management counseling program at the Minot Air Force Base and for a

time was prescribed medication. Both parties testified that the Plaintiff has been in three separate altercations with others over the years and the Plaintiff testified that the Defendant has been in two separate altercations with others, the last terminating with mutual restraining orders against the Defendant and the other woman involved. The Plaintiff testified on one occasion he did pull the Defendant off her bed and on another occasion he threw a clothes basket at her. He also testified on one occasion that he confronted her early one morning while she was getting dressed at a local motel. He also testified that during the marriage the Defendant threw dishes at him and called him names. The Defendant feels the Plaintiff is unpredictable; the Plaintiff feels the Defendant has a drinking problem and parties too much.

[¶ 7] On October 19, 1999, Jacobsen moved for a new hearing and for amendment of the amended judgment. Requesting the court reconsider its custody decision, she asserted there was "evidence presented that [Tulintseff] had abused [her] that fits the description of domestic violence under N.D.C.C. § 14–07.1–01(2)."

[¶ 8] Indicating it had reviewed the record and reasoning "it is clear that the best interests of the children require they be placed in the care, custody, and control of [Tulintseff]," the court denied Jacobsen's motion. Jacobsen appealed from the amended judgment and the order denying her motion.

## II

[¶ 9] Jacobsen asserts the trial court failed to adequately explain its custody award [1] in light of the evidence Tulint-

---

1. Neither party has raised the issue of demonstrating changed circumstances prior to entering a modified custody order under N.D.C.C. § 14–09–06.6. The original judgment was based upon the parties' stipulation and provided for rotating custody only until Alexandra reached school age. At that time, the parties were to agree to a custody arrangement. They have not been able to do so. Because the original judgment was based on the parties' stipulation rather than a review of the children's best interests, the trial court properly considered "all relevant evidence, including pre-divorce conduct and activities, in making a considered and appropriate custody decision in the best interests of the chil-

seff perpetrated domestic violence. Section 14–09–06.2(1)(j), N.D.C.C., creates a rebuttable presumption against awarding custody to the perpetrator of domestic violence under three circumstances: (1) "there exists one incident of domestic violence which resulted in serious bodily injury," (2) there exists one incident of domestic violence which "involved the use of a dangerous weapon," or (3) "there exists a pattern of domestic violence within a reasonable time proximate to the proceeding." Evidence of domestic violence which is insufficient to trigger the presumption remains a factor to be considered in determining the child's best interests under N.D.C.C. § 14–09–06.2(1). *Holtz v. Holtz,* 1999 ND 105, ¶ 27, 595 N.W.2d 1.

[¶ 10] Under N.D.C.C. § 14–07.1–01(2), " '[d]omestic violence' includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members."

■ [¶ 11] Here, there is evidence of three specific incidents of domestic violence. Jacobsen testified Tulintseff: (1) pulled her by her feet off a bed, (2) threw a laundry basket at her, striking her in the stomach, and (3) dragged her by her hair down the street. Tulintseff testified he pulled Jacobsen by her feet off a bed, "toss[ed]" a laundry basket at her at a time when his collar bone was broken, and did not recall dragging Jacobsen by her hair down the street.[2]

■ [¶ 12] Generally, "[a] trial court's findings of fact should reflect the basis of

the court's decision." *Emter v. Emter,* 1999 ND 102, ¶ 8, 595 N.W.2d 16. A factual basis is necessary for this Court to review whether the findings are clearly erroneous. *Id.* We, however, "do not remand for clarification of findings of fact when, through inference or deduction, we can discern the rationale for the result reached by the trial court." *Holtz,* at ¶ 18.

■ [¶ 13] Regarding the presumption under N.D.C.C. § 14–09–06.2(1)(j), we have indicated "[w]e require specific factual findings and conclusions regarding the presumption so we are not left guessing as to the trial court's reasoning for applying or not applying the presumption." *Reeves v. Chepulis,* 1999 ND 63, ¶ 14, 591 N.W.2d 791. Specific findings are not required when the evidence of domestic violence is insufficient to trigger the presumption. *Holtz,* at ¶ 27. In *Kasprowicz v. Kasprowicz,* 1998 ND 68, ¶ 13, 575 N.W.2d 921, we reversed and remanded because the trial court failed to adequately explain its findings regarding the presumption. In *Kasprowicz,* the trial court identified the domestic violence perpetrated by the mother's cohabitant as a "critical factor" in the custody determination but nevertheless awarded partial custody to the mother. *Id.*

■ [¶ 14] Trial courts should strive to make explicit findings regarding the applicability of the presumption under N.D.C.C. § 14–09–06.2(1)(j). In cases without explicit findings, such as here, the parties are not afforded complete direction and our review is difficult. *See generally Davis v. Davis,* 458 N.W.2d 309, 313 (N.D.1990) (criticizing a trial court's decision which

---

dren." *Wetch v. Wetch,* 539 N.W.2d 309, 312–13 (N.D.1995).

2. In addition, Jacobsen testified Tulintseff, while she was at a friend's home, pulled a railing off a stairway and broke a table and two chairs in their home. She also testified Jacobson threw a drill into a mirror. However, no evidence shows these acts caused Jacobsen to be imminently afraid Tulintseff

would harm her. The acts therefore are not evidence of domestic violence. *Ryan v. Flemming,* 533 N.W.2d 920, 923–24 (N.D.1995) (citing N.D.C.C. § 14–07.1–01(2) and concluding a husband's breaking a flower pot and pulling a phone out of a wall "were viewable as demonstrative" and insufficient to raise the presumption under N.D.C.C. § 14–09–06.2(1)(j)).

made it "especially difficult for us to review the record in determining whether or not the findings were clearly erroneous"); *Williams County State Bank v. Gallagher,* 35 N.D. 24, 159 N.W. 80, 80 (1916) (including information "[f]or the guidance of the parties").

[¶ 15] We can, however, reasonably infer the trial court considered the evidence of domestic violence and found it insufficient to trigger the presumption under N.D.C.C. § 14–09–06.2(1)(j). The court found "[n]o dangerous weapons were ever used by these parties and there was no serious bodily injury." By its reference to the timing of the incidents of domestic violence, the court implied the incidents were too remote to constitute a pattern of domestic violence within a reasonable time proximate to the proceeding. The court noted Jacobsen testified Tulintseff was volatile "during the marriage," "[t]here was evidence of domestic violence and outbursts of fits of anger but [Tulintseff] has taken steps to correct that," and Tulintseff "went to an anger management counseling program ... and for a time was prescribed medication." The court also pointed out that after the divorce stipulation was signed Tulintseff and Jacobsen went out for a drink, and Jacobsen lived with Tulintseff and their two children until Tulintseff received a military transfer approximately two weeks after the divorce. We thus conclude the trial court's findings, although minimal, are sufficient to determine the court properly considered whether the presumption against awarding custody under N.D.C.C. § 14–09–06.2(1)(j) should be applied.

[¶ 16] A trial court's determination on whether the presumption is applicable is a finding of fact which will not be reversed unless it is clearly erroneous. *Ryan v. Flemming,* 533 N.W.2d 920, 923 (N.D.1995). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence supporting it, or, although there is some evidence supporting it, on the entire record we are left with a definite and firm conviction a mistake has been made. *Brown v. Brown,* 1999 ND 199, ¶ 10, 600 N.W.2d 869.

[¶ 17] Jacobsen does not challenge the trial court's finding there were no incidents that resulted in serious bodily injury or involved the use of a dangerous weapon. The presumption accordingly would trigger only if "there exists a pattern of domestic violence within a reasonable time proximate to the proceeding." *See* N.D.C.C. § 14–09–06.2(1)(j).

[¶ 18] Evidence shows the incidents occurred before the divorce judgment was entered on May 31, 1996, nearly three years before Jacobsen sought sole custody. In her motion to amend the judgment, Jacobsen conceded "no domestic violence has occurred since the time of the divorce." Jacobsen testified some of the incidents occurred while she was pregnant and one incident may have occurred before the marriage. Tulintseff testified the incidents did not occur after the first year of marriage. He testified his anger problems decreased after he attended counseling. Although Jacobsen argues the incidents are not remote, it is not clearly erroneous to find incidents occurring three or more years prior to the motion were not within a reasonable time proximate to the proceeding. Jacobsen also emphasizes Tulintseff was involved, after the divorce, in two altercations not involving family or household members. Such incidents, although they may be considered by the trial court under the best interests factors, do not meet the definition of domestic violence for purposes of raising the presumption under N.D.C.C. § 14–09–06.2(1)(j).

[¶ 19] Evidence also shows the incidents of domestic violence were not severe. Severe incidents not involving the use of a dangerous weapon or resulting in serious bodily injury and thus subject to the requirement they occur within a "reasonable time proximate to the proceeding" might lengthen the period which is consid-

ered a "reasonable time proximate to the proceeding." *See generally Zimmerman v. Zimmerman,* 1997 ND 182, ¶ 8, 569 N.W.2d 277 (indicating the severity of domestic violence should be considered when both parties have committed domestic violence); *Huesers v. Huesers,* 1998 ND 54, ¶ 10, 574 N.W.2d 880 (emphasizing, in part, the father "used aggressive force" against the mother and concluding there was a pattern of domestic violence within a reasonable time proximate to the proceeding). Jacobsen testified Tulintseff never struck her or threatened to do so and she never sought medical attention after any of the incidents. Tulintseff testified he never struck or kicked Jacobsen and Jacobsen was not injured during the incidents. Both parties indicated they continued living together after the divorce and split only when Tulintseff received a military transfer. Finally, Jacobsen's brief suggests the incidents only became important to the best interests of the children when the custody arrangement became inconvenient. Jacobsen indicated "Tulintseff moved from North Dakota, first to Louisiana, and then ultimately, when he separated from the Air Force, to Seattle, Washington. At that time, it became apparent that the split custody arrangement was unworkable." (citation omitted).

[¶ 20] Because there is evidence the incidents occurred several years before Jacobsen moved for sole custody and there is evidence the incidents were not severe, we conclude the trial court did not clearly err in finding there is not a pattern of domestic violence within a reasonable time proximate to the proceeding. We further conclude the trial court did not clearly err in finding there is not sufficient evidence to trigger the presumption under N.D.C.C. § 14–09–06.2(1)(j).

### III

[¶ 21] Because we can reasonably infer the trial court considered the evidence of domestic violence and found it insufficient to trigger the presumption under N.D.C.C.

§ 14–09–06.2(1)(j) and because that finding is not clearly erroneous, we affirm.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.