2002 ND 37

**Delmer T. KELLY, Plaintiff and Appellee,**

v.

**Susan C. KELLY, Defendant and Appellant.**

**No. 20010165.**

Supreme Court of North Dakota.

Feb. 21, 2002.

Todd L. Cresap of Kenner Sturdevant Peterson & Cresap, PC, Minot, for plaintiff and appellee.

Jeff L. Nehring of Nilles, Hansen & Davies, Ltd., Williston, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]  Susan Kelly appealed from a Northwest Judicial District Court order granting Delmer Kelly's motion for a change of custody of their two daughters. We affirm, concluding the district court did not err in changing custody.

I

[¶ 2]  Delmer and Susan Kelly were divorced in November of 1997.  They resolved all matters in the divorce by a stipulation.  At the time of the divorce, Susan Kelly was awarded sole custody of the couple's two daughters.  No child support was ordered.  In late 2000, the Ward County Regional Child Support Enforcement Unit sought to establish a child support order.  In January 2001, Delmer Kelly filed a motion for change of custody, alleging a substantial change of circumstances had occurred and a change of custody was necessary to serve the best interests of the children.

[¶ 3]  At the custody hearing, Susan Kelly testified she had suffered a total of five strokes between 1996 and 1998.  She testified a friend and co-worker had cared for her daughters during the times she had been unable to care for them.  She also testified she had asked Delmer Kelly to take the children while she was ill, but he declined.  She further testified her friend had cared for the girls for a total of twelve months throughout the period of her health problems.

[¶ 4]  Susan Kelly testified she and the children had moved several times since the separation and divorce.  She had moved to Minot, North Dakota, to pursue a masters degree in music.  She then moved to Colorado for a job opportunity.  She then

moved back to Minot and then to Bowman, North Dakota. She left Bowman and moved to Westhope, North Dakota. Next, she moved to Fargo, North Dakota. While living in Fargo, she moved twice. She testified she has resided in Lignite, North Dakota, since 1999 with a man to whom she is not married. She testified the two children accompanied her in each of the moves, which took place between 1996 and 2000.

[¶ 5] The girls testified their mother had entered into several transitional relationships prior to her current relationship. The girls testified their mother would bring her male companions home for overnight visits. The younger daughter testified she and her sister had personally observed their mother in bed with an overnight guest. The younger daughter also testified to the names and physical descriptions of her mother's overnight guests.

[¶ 6] Delmer Kelly testified he completed his education after the divorce, moved to Fargo, and went to work for the Veteran's Administration. In July of 1999, he married Lori Kelly, who has four children from a previous marriage. Lori Kelly testified her children live with their father and she has visitation every other weekend and for extended periods during summer vacations and school holidays.

[¶ 7] He also testified that for approximately five months during the time Susan Kelly lived in Fargo, the girls stayed with him and his wife. He testified the girls were enrolled and attended school in Fargo during this period. Susan Kelly testified a member of Lori Kelly's family was accused of inappropriate sexual conduct toward the girls while they were staying with their father. Lori Kelly testified a police investigation took place, but it revealed insufficient evidence and no further action was taken by the police. She also testified that since this incident, her family member is no longer allowed to visit their home.

[¶ 8] Delmer Kelly testified he has had sporadic contact with his daughters since the separation and divorce. He testified the girls informed him of their moves after the fact. Susan Kelly testified her former husband had come to visit the children only once and had never exercised his summer visitation privileges. Delmer Kelly testified he had contact with the children when they were living in Westhope and Minot, and the older daughter testified he exercised two-and-a-half weeks of visitation with her in the summer of 2000. Delmer Kelly also testified he kept in contact with his daughters through e-mail and telephone calls.

[¶ 9] After the incident with Lori Kelly's family member, Donna Norrie, an employee of Burke County Social Services, was assigned to contact Susan Kelly and the girls. Norrie testified the man Susan Kelly is living with is a stabilizing factor in the children's home. Norrie also testified the children were well-dressed and active in extracurricular activities at school. She also testified the children wanted to continue living with their mother.

[¶ 10] During the custody hearing, the district court heard from both the girls, ages fifteen and twelve, in chambers, out of the presence of their parents. The district court found the older daughter was a "bright, articulate, 15–year old who did not hide her strong desire to live with her father." The district court also stated it found her "to be a particularly credible witness."

[¶ 11] The district court found a material change in circumstances, and found a change in custody was necessary to serve the best interests of the children.

[¶ 12] The district court has jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 13] A district court's decision whether to change custody is a finding of fact subject to the clearly erroneous standard of review. *Anderson v. Resler,* 2000 ND 183, ¶ 8, 618 N.W.2d 480. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. N.D.R.Civ.P. 52(a); *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 5, 562 N.W.2d 390.

[¶ 14] The test for changing the custody of a child is set forth in N.D.C.C. § 14–09–06.6(6):

The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

[¶ 15] First, in deciding whether to change custody, a court must consider whether there has been a material change of circumstances since the original custody decree. N.D.C.C. § 14–09–06.6(6)(a).

Second, if the court decides there has been a material change in circumstances, it must decide whether a change in custody is necessary to serve the best interests of the child. N.D.C.C. § 14–09–06.6(6)(b).

[¶ 16] As we have stated, the use of "necessary" in the codification of the second step of the two-step test did not signal a departure from the standard embodied in our case law. *Holtz v. Holtz,* 1999 ND 105, ¶ 10, 595 N.W.2d 1 ("This part of the statutory formulation essentially tracks the two-step approach previously used by this Court for deciding a change of custody case.") Since N.D.C.C. § 14–09–06.6(6) became effective, we have continued to reference our prior case law, and we have sometimes substituted "require" or "compel" for the statutory language of "necessary" when reciting the second step of the test. *See, e.g., Selzler v. Selzler,* 2001 ND 138, ¶ 21, 631 N.W.2d 564; *Mayo v. Mayo,* 2000 ND 204, ¶ 14, 619 N.W.2d 631; *O'Neill v. O'Neill,* 2000 ND 200, ¶ 4, 619 N.W.2d 855; *Anderson v. Resler,* 2000 ND 183, ¶ 8, 618 N.W.2d 480; *In re K.M.G.,* 2000 ND 50, ¶ 4, 607 N.W.2d 248; *Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 16, 603 N.W.2d 896; *Myers v. Myers,* 1999 ND 194, ¶ 6, 601 N.W.2d 264; *Holtz v. Holtz,* 1999 ND 105, ¶¶ 9–10, 595 N.W.2d 1; *Ramstad v. Biewer,* 1999 ND 23, ¶ 11, 589 N.W.2d 905; *Gietzen v. Gietzen,* 1998 ND 70, ¶ 8, 575 N.W.2d 924.

## A

[¶ 17] A material change of circumstances would be important new facts that were unknown at the time of the prior custodial decree.[1] *Selzler,* 2001 ND 138, ¶ 21, 631 N.W.2d 564; *Mayo,* 2000 ND

---

1. The legislature did not provide a definition of the word material in N.D.C.C. § 14–09–06.6(6)(a). When a definition is not provided, "[w]ords used in any statute are to be understood in their ordinary sense." *See* N.D.C.C. § 1–02–02. The concurrence's suggestion that "material" should be interpreted to mean something other than its plain meaning is not in accordance with our rules of statutory interpretation.

204, ¶ 16, 619 N.W.2d 631; *In re N.C.C.*, 2000 ND 129, ¶ 18, 612 N.W.2d 561. "A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." *Selzler*, at ¶ 21. The party seeking a modification of the custody order bears the burden of proof. N.D.C.C. § 14–09–06.6(8).

[¶ 18] The district court found the following material changes in circumstances:

> That since the time of the granting of the divorce judgment in this matter, numerous changes constituting a significant change in circumstances has occurred. Those changes include, but are not limited to the following:
>
> A. The Plaintiff, Delmer T. Kelly, has changed residence to Fargo, North Dakota and has remarried.
>
> B. The Plaintiff, Delmer T. Kelly, is no longer a student, is no longer on disability, and has full-time employment with the Veterans Administration.
>
> C. The residence of the minor children ... has changed on a number of occasions.
>
> D. The children have gotten to an age where they are able to articulate their preference concerning custody issues to the Court.

[¶ 19] The relocation of a parent and a change of a child's preference may constitute a significant change of circumstances. *Gietzen v. Gietzen*, 1998 ND 70, ¶ 10, 575 N.W.2d 924 (a custodial parent's decision to move may be viewed as a significant change of circumstances and a mature child's preference may be particularly significant in determining whether there has been a significant change of circumstances); *Mosbrucker v. Mosbruck-*

*er*, 1997 ND 72, ¶ 10, 562 N.W.2d 390 (a mature child's preference can be considered as a change in circumstances); *Alvarez v. Carlson*, 524 N.W.2d 584, 590 (N.D. 1994) ("a child's preference is a factor that may be considered when determining whether there has been a significant change of circumstances"). The district court did not err in finding the numerous relocations of Susan Kelly and the change in the children's preferences were material changes of circumstance.

[¶ 20] The district court's findings regarding the improvements in Delmer Kelly's life would not, by themselves, constitute a significant change in circumstances. *Delzer v. Winn*, 491 N.W.2d 741, 744 (N.D.1992) (improvements in the non-custodial parent's life were not enough to show a significant change in circumstances). Improvements in a non-custodial parent's situation "accompanied by a general decline in the condition of the children with the custodial parent over the same period" may constitute a significant change in circumstances. *Hagel v. Hagel*, 512 N.W.2d 465, 468 (N.D.1994). The district court did not err by finding Delmer Kelly's situation had improved while at the same time his daughters' situation had declined.

[¶ 21] The district court did not err in finding a material change of circumstances had taken place.

B

[¶ 22] In determining whether modification of custody is necessary to serve the best interests of the children, the factors in N.D.C.C. § 14–09–06.2(1) must be applied. N.D.C.C. § 14–09–06.6(6)(b); *Blotske v. Leidholm*, 487 N.W.2d 607, 610 (N.D.1992). Section 14–09–06.2(1), in part, provides:

> For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration

and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence.

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

"In a modification proceeding, the best interests of the child must be gauged against the backdrop of the stability of the child's relationship with the custodial parent." *Blotske*, 487 N.W.2d at 610. "[I]f the previous custody placement was based upon the parties' stipulation and not by consideration of the evidence and court made findings, the trial court must consider all relevant evidence, including pre-divorce conduct and activities, in making a considered and appropriate custody decision in the best interests of the children." *Wetch v. Wetch*, 539 N.W.2d 309, 312–13 (N.D.1995).

[¶ 23] In its findings of fact, the district court addressed the N.D.C.C. § 14–09–06.2(1) factors. The district court did not find any of the factors favored Susan Kelly. The district court found factors (b), (c), (d), (e), (f), and (i) favored Delmer Kelly. The district court did not make specific findings regarding factors (g) and (h), the mental and physical health of the parents, and the home, school, and community record of the children. The district court found a change in custody from Susan Kelly to Delmer Kelly was necessary to serve the best interests of the children.

[¶ 24] The district court found factor (a) did not favor either party and in its memorandum opinion said both parents had some deficiencies in this area. The district court criticized Delmer Kelly for his limited attempts to keep in touch with his daughters, for refusing to take temporary custody during Susan Kelly's illnesses, for not offering financial support even

though it was not required, and for failing to "fully understand the impact [the] actions [of Lori Kelly's family member] may have had on his daughters." The district court also noted, in spite of Susan Kelly's "past personal and medical problems," it was convinced her love for the children was equal to Delmer Kelly's.

[¶ 25] The district court found factor (b) favored Delmer Kelly. In its memorandum opinion, the district court said:

Past ·actions · of Susan in frequenting bars and bringing various men home for overnight visits (conduct which has significantly discontinued since residing with [her current male companion]) has seriously eroded Susan's credibility to serve as a role model. Susan has been residing with a man to whom she is not married for approximately two years.

The district court praised Susan Kelly for seeking to improve her parenting skills, but concluded her efforts should have taken place long ago. The district court found Delmer Kelly had a greater capacity to give his daughters guidance.

[¶ 26] The district court found factor (c) slightly favored Delmer Kelly. The district court noted Susan Kelly's ability to provide for the children was dependent upon her relationship with the man she is living with.

[¶ 27] The district court found factor (d) favored Delmer Kelly. In its memorandum opinion, the district court said:

The numerous moves by Susan, her medical problems and transitional relationships with members of the opposite sex have done little to provide a satisfactory environment in which to raise a family. The situation has significantly improved due to [the] stabilizing influence [of her current male companion]. On the other hand, Delmer has remarried and his new relationship seems quite secure. Delmer has obtained sig-

nificant employment and is in the process of constructing a new home. The situation with [Lori Kelly's family member] is a consideration. However, Delmer has made it quite clear that [this individual] is no longer welcome in his home.

The district court questioned the suitability of the children's environment. The district court, finding factor (e) also clearly favored Delmer Kelly, referenced earlier discussions in its memorandum opinion.

[¶ 28] The district court found factor (f) favored Delmer Kelly. In its memorandum opinion, the district court said:

Although morality is often based on one's subjective judgment, much of Susan's past conduct is beyond bounds of even the most liberal tolerances. [The younger daughter] testified that she personally observed her mother in bed with an overnight guest and had sufficient familiarity to name names and offer physical descriptions of various overnight male visitors. [The older daughter] referred to her mother's past conduct as "disgusting."

Although I have other concerns which have already been expressed, I would not be quick to render judgment on Susan's current cohabitation because I am more inclined to consider the permanency of relationships rather than their legality. In considering the entire course of conduct since the divorce, I find that this factor favors Delmer.

[¶ 29] Regarding factor (i), the district court gave weight to the children's preferences, especially the older daughter's. Both girls expressed a desire to live with their father. The district court viewed the younger daughter's testimony with more skepticism, but concluded her preference was entitled to some weight. Specifically, the district court stated:

I asked [the older daughter] if perhaps, when things are not going well at home, whether she may be imagining how she would want things to be if she were to reside with her father. [She] responded that she had lived for six months in Fargo with her father and that she knows what conditions would exist.

I asked [her] if she would be prepared to cope with becoming enrolled in a much larger school system. Again, [she] stated that she had already spent several months attending a West Fargo school and that she received mostly A's.

[She] has a boy friend in the school that she has currently been attending. [She] is well aware that she would be seeing less of her boy friend if she were to move to Fargo. When considered from the perspective of a teenager, this fact is a strong testament to her desire to live with her father.

[¶ 30] The district court found there was no evidence of domestic violence. The district court found factor (k) did not favor either party.

[¶ 31] The district court appropriately considered the stability of the relationship between the children and the custodial parent. *See In re N.C.C.*, 2000 ND 129, ¶¶ 25–26, 612 N.W.2d 561 (evidence of a "pattern of moving around and leaving her children unattended" indicates the child's relationship with the mother lacked stability); *In re D.F.G.*, 1999 ND 216, ¶ 16, 602 N.W.2d 697 ("A parent's frequent moving is evidence of the parent's inability to provide a stable environment for a child."); *Ramstad v. Biewer*, 1999 ND 23, ¶ 16, 589 N.W.2d 905. The district court found the relationship between Susan Kelly and her daughters lacked stability, stating "[t]he numerous moves by Susan, her medical problems and transitional relationships with members of the opposite sex have done little to provide a satisfactory environment in which to raise a family." Likewise, the district court properly reviewed the moral fitness of each parent. *Gietzen v. Gietzen*, 1998 ND 70, ¶¶ 7, 11, 575 N.W.2d 924.

[¶ 32] The preference of the children "can be an important factor to consider when determining the best interests of the child." *Loll v. Loll*, 1997 ND 51, ¶ 15, 561 N.W.2d 625. As children mature, more weight may be given to their preferences, if there are persuasive reasons for their preferences. *Id.* (citing *Mertz v. Mertz*, 439 N.W.2d 94, 96 n. 2 (N.D.1989)); *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 10, 562 N.W.2d 390. The district court stated it looked to the "age, intelligence, maturity, and the reasons given" when considering the weight to be given to a child's preference. Here, both girls expressed a desire to live with their father, and the district court appropriately considered their preferences in finding factor (i) weighed heavily in favor of Delmer Kelly.

[¶ 33] Susan Kelly argued the district court should consider only her recent conduct when reviewing the best interests of the children. The district court appropriately considered all the conduct and activities of the parties since the original stipulation. *Tulintseff v. Jacobsen*, 2000 ND 147, ¶ 9 n. 1, 615 N.W.2d 129; *Wetch v. Wetch*, 539 N.W.2d 309, 312–13 (N.D.1995) ("[I]f the previous custody placement was based upon the parties' stipulation and not by consideration of the evidence and court made findings, the trial court must consider all relevant evidence, including pre-divorce conduct and activities, in making a considered and appropriate custody decision in the best interests of the children.").

[¶ 34] After the discussion of the best-interest factors, the district court found "there [had] been a significant change of

circumstances which require, in the best interests of the children, that the Judgment dated November 6, 1997, be modified to provide Delmer with care, custody and control of [his daughters]." While the district court did not provide a separate analysis of its conclusion that a change in custody was necessary, we can "through inference or deduction ... discern the rationale for the result reached by the trial court" and will not remand for a clarification. *Holtz v. Holtz,* 1999 ND 105, ¶ 18, 595 N.W.2d 1.

[¶ 35] After reviewing the entire record, we are not left with a definite and firm conviction a mistake was made by the district court. We conclude the district court's findings are not clearly erroneous.

### III

[¶ 36] The district court's order changing custody of the children from Susan Kelly to Delmer Kelly is affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring in the result.

[¶ 38] Although I am somewhat concerned the trial court merely applied the best interest factors as though this was an original custody order and failed to gauge them against the preference for stability for the children, the court's rationale for concluding the change of custody was required in the best interests of the children can be deduced from its findings about the lack of stability that existed for a time in the children's physical environment due to frequent relocations and in their emotional environment due to Susan Kelly's indiscriminate relationships with men. I, therefore, concur in the result. I write separately because I believe the majority opinion's citation to *Wetch v. Wetch,* 539 N.W.2d 309 (N.D.1995) is misplaced in light of the language of N.D.C.C. § 14–09–06.6(6) and the facts of this case. Also, I believe the majority opinion does not correctly set forth the two-step modification of custody analysis of N.D.C.C. § 14–09–06.6(6).

### I

[¶ 39] The issue in *Wetch* was "whether it is error in a change of custody proceeding for a trial court to refuse to consider evidence of relevant custody factors occurring prior to entry of the original custody decree." 539 N.W.2d at 312. We concluded the trial court abused its discretion in excluding such evidence because the prior custody decisions in *Wetch* were "based on stipulation of the parties, not upon evidence introduced in a contested proceeding and not by considered fact finding of the court." *Id.* at 313. Thus, we remanded the case to the trial court to consider the pre-divorce conduct in its modification of custody analysis. *Id.*

[¶ 40] Subsequent to our decision in *Wetch,* the Legislature enacted N.D.C.C. § 14–09–06.6. Section 14–09–06.6(6), N.D.C.C., provides:

> The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:
>
> a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>
> b. The modification is necessary to serve the best interest of the child.

The majority opinion cites to *Wetch* in its discussion of N.D.C.C. § 14–09–06.6(6)(b), whether the modification is necessary to serve the best interest of the child. *See*

Majority Opinion at ¶ 22. However, the only issue resolved in *Wetch,* was whether a trial court should "consider" pre-divorce facts in a change of custody proceeding where the prior custody award was based upon a stipulation. *See* 539 N.W.2d at 312. The determination of what facts a trial court may consider in a change of custody proceeding is now governed by N.D.C.C. § 14–09–06.6(6).

[¶ 41] Under section 14–09–06.6(6)(a), N.D.C.C., a court may modify a prior custody order "[o]n the basis of facts that have arisen since the prior order *or which were unknown to the court at the time of the prior order.*" (Emphasis added). Thus, under 14–09–06.6(6)(a) a trial court should consider facts occurring prior to the entry of an original custody decree based on a stipulation if such facts "were unknown to the court at the time of the prior order." N.D.C.C. § 14–09–06.6(6)(a). However, establishing what facts a trial court may consider at a modification proceeding merely begins the inquiry under N.D.C.C. § 14–09–06.6(6). More difficult is the use of this evidence in the application of the statutorily required findings. As explained by an Illinois Appellate Court in construing a statute somewhat similar to N.D.C.C. § 14–09–06.6(6):

> Section 610 allows the court in making its decision to rely upon facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of its prior judgment. Our court had an opportunity to address this section in *Boggs v. Boggs* (1978), 65 Ill. App.3d 965 [22 Ill.Dec. 645] 383 N.E.2d 9. There we stated:
>
> > "Section 610(b) clearly states that evidence may be received of either newly arisen facts or those unknown to the court at a prior hearing. Obviously, the reference to facts which were unknown at prior hearing includes a ref-

erence to such facts which were then in existence. Otherwise there would be no reason to refer to such facts because they would fall into the category of newly arisen facts. Not so clear is an answer to the question of whether the unknown facts in existence at the time of the prior hearing may be considered as bearing on the change of circumstances requirement. Obviously, facts in existence at a prior time cannot be the basis of a change in circumstances taking place after that time. However, the wording of 610(b) is constructed in such a way as to indicate that evidence of both newly arisen facts and those previously unknown to the court can be considered not only on the question of the child's best interests but also on the change of circumstances requirement.

... [We] construe the words 'a change has occurred in the circumstances of the child or his custodian' to mean that a change in circumstances as previously shown to the court has occurred. That construction would enable the court hearing the petition to modify to exercise its judicial discretion rather than be bound by the previous order based upon an agreement. We adopt that construction." 65 Ill. App.3d 965, 967–68 [22 Ill.Dec. 645] 383 N.E.2d 9, 11–12.

*We do not suggest that every time a noncustodial parent seeks to modify a stipulated custody judgment the court is to automatically find a change of circumstances and proceed to a decision based on the best interest of the child.* The court must still weigh the evidence and find if the circumstances existing at the time of the prior custody hearing were different than they appeared. If the evidence indicates the custodial parent was fit and acceptable at the time of the prior hearing, then modification

must rest on subsequent change of circumstances of the child or of the child's custodian. However, if the evidence indicates a lack of fitness at the time of the prior agreed judgment, then that factor should be considered in determining the propriety of a modification under the provisions of section 610 which require clear and convincing evidence.

*In re Marriage of Gibbons,* 158 Ill.App.3d 998, 111 Ill.Dec. 148, 512 N.E.2d 52, 55 (1987) (emphasis added).[2]

[¶ 42] Similarly, under N.D.C.C. § 14–09–06.6(6)(a), a court must find that a material change in circumstances has occurred based on facts that have arisen since the prior order or that were unknown to the court. *See* N.D.C.C. § 14–09–06.6(6)(a). However, under the wording of N.D.C.C. § 14–09–06.6(6), the language "[o]n the basis of facts that have arisen since the prior order" only modifies the finding of a material change in circumstances and not subsection (b) relating to the best interest analysis. The question becomes whether the Legislature intended to permit the trial court to "rehash" facts existing both prior to and at the time of the prior custody order or to limit the evidence considered in the best interest analysis also to those that have arisen since the last custody order or that were unknown to the court. The doctrine of res judicata would make it inappropriate to rehash facts already tried or which could have been tried. Even *Wetch* was limited to cases involving stipulations. 539 N.W.2d at 313.

[¶ 43] However, we need not decide that issue in this case because Susan has never raised any issue regarding the consideration of pre-divorce evidence at the trial court level or on appeal. Thus, the majority's citation to *Wetch* at ¶¶ 22 and 33 is misplaced. What Susan does argue is that the trial court erred in its application of N.D.C.C. § 14–09–06.6(6) by failing to properly weigh her past moves, health problems, and transitional relationships against the recent stability and continuity she had been providing her children.

II

[¶ 44] Section 14–09–06.6(6), N.D.C.C., was generally intended to codify this Court's two-step approach to modification of custody determinations. *See Anderson v. Resler,* 2000 ND 183, ¶ 8, 618 N.W.2d 480 ("In 1997, the legislature codified this Court's two-step approach for deciding a change of custody request."). Under the two-step approach relied on by this court prior to the enactment of N.D.C.C. § 14–09–06.6(6), we recognized "[u]nlike an initial custody determination in which the trial court considers only the best interests and welfare of the child, a motion to modify custody requires a two-step analysis."

2. The statute at issue in *Gibbons* provided:

After the expiration of the 2 year period following a custody judgment specified in subsection (a) of this Section, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. In the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate the joint custody and make any modification which is in the child's best interest.

1982 Ill. Laws 82–1002 Sec. 610(b). Since the decision in *Gibbons,* Illinois's modification statute has been amended in ways not pertinent to this case. *See* 750 Ill. Comp. Stat. Ann. 5/610(b) (West 1999).

*Anderson v. Hensrud*, 548 N.W.2d 410, 412 (N.D.1996). "First, the trial court must determine whether there has been a significant change in circumstances since the original custodial placement." *Id.* "If there has been a significant change in circumstances, then the trial court must determine whether the significant change compels, in the child's best interests, a change in custody." *Id.* "The two-step analysis reflects the 'doctrinal aversion to changing the custody of a happy child who has been living with one parent for a substantial time.' " *Id.* (quoting *Alvarez v. Carlson*, 524 N.W.2d 584, 590 (N.D.1994)). We have noted, "the important factor in any change of custody proceeding is the stability of the child's relationship with the custodial parent," and "[i]t is the continuity of the custodial parent-child relationship that is critical." *Ramstad v. Biewer*, 1999 ND 23, ¶¶ 14,15, 589 N.W.2d 905.

[¶ 45] The clear legislative intent of N.D.C.C. § 14–09–06.6 is to make custody determinations as permanent as possible and to curtail repeat "painful, disruptive, and destabilizing" custody battles. *See Quarne v. Quarne*, 1999 ND 188, ¶¶ 9–10, 601 N.W.2d 256. The question is how does N.D.C.C. § 14–09–06.6(6) accomplish the Legislature's purpose of curtailing custody battles and of providing stability in the lives of children without the requirement that the material change in circumstances must compel or require a change in custody to further the best interests of the child.

[¶ 46] Under the first step of the two-step approach of our prior case law, a party moving for a modification of custody had to show that a significant change in circumstances occurred since the prior custody order. Under our prior case law, we defined a "change in circumstances" as "new facts that were unknown at the time of the prior custodial decree." *See Mc-*

*Donough v. Murphy*, 539 N.W.2d 313, 316 (N.D.1995); *Alvarez*, 524 N.W.2d at 589. Unfortunately, some of our recent cases have relied on this same definition to determine whether a "material" change has occurred in the circumstances of the child or the parties under N.D.C.C. § 14–09–06.6(6)(a). *See Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564 ("A material change in circumstances occurs when new facts are presented that were unknown to the moving party at the time the divorce decree was entered."); *Mayo v. Mayo*, 2000 ND 204, ¶ 16, 619 N.W.2d 631 (same). However, we have also said that a "significant change in circumstances" is one that "so adversely affect[s] the child that custody should be changed," *Blotske v. Leidholm*, 487 N.W.2d 607, 609 (N.D.1992), and "so adversely affects the child that a change of custody is necessary," *Alvarez*, 524 N.W.2d at 589. Under N.D.C.C. § 14–09–06.6(6)(a), a trial court must make a finding that a "material change has occurred in the circumstances of the child or the parties" on facts "that have arisen since the prior order or which were unknown to the court at the time of the prior order." This clearly means that it is after the court identifies new facts or changes in circumstances that it then determines whether these changes are a "material" change in circumstances. *See Overboe v. Farm Credit Serv. of Fargo*, 2001 ND 58, ¶ 10, 623 N.W.2d 372 ("If possible, each word of a statute must be given effect."). Thus, in enacting N.D.C.C. § 14–09–06.6(6)(a), the Legislature clearly intended the occurrence of a material change in the circumstances of the child or the parties to be something more than the mere presentation of new facts that were unknown to the moving party at the time the divorce decree was entered. *See Mayo*, at ¶ 16.

[¶ 47] The Legislature did not define a "material" change in circumstances, and it is very important, therefore, for our Court

to interpret what is meant. In accord with the purpose of the legislation, the finality of decrees and the preference for stability of the custodial parent-child relationship, the determination of whether there is a material change of circumstances must be met only by evidence of a significant or important change that has a negative impact on the well-being of the child. This would adequately provide a threshold that would guard against modification of a prior custody decree and preserve the public policy in favor of stability for the children. The purpose of requiring moving parties to make this showing is similar to the purpose that was served by the requirement of our two-step approach which required the significant change in circumstances to compel a change in custody in order to serve the best interest of the child. *See Ramstad,* 1999 ND 23, ¶ 27, 589 N.W.2d 905 (Vande Walle, C.J., concurring in result) ("The requirement that the changes in circumstances necessary to support a change in custody must compel or require that change, expresses our position that because of the significance of stability in a child's life, the custody of that child is not to be changed as a result of every change in circumstances of the parents.").

[¶ 48] This interpretation of section 14–09–06.6(6) is supported by an examination of N.D.C.C. § 14–09–06.6(4). *See North Dakota Fair Housing Council, Inc., v. Peterson,* 2001 ND 81, ¶ 36, 625 N.W.2d 551 (" 'Statutes relating to the same subject matter shall be construed together and should be harmonized, if possible, to give meaningful effect to each, without rendering one or the other useless.' "). Section 14–09–06.6(6) was adopted at the same time as N.D.C.C. § 14–09–06.6(4). Under 14–09–06.6(4), N.D.C.C., a party seeking modification of custody must first submit briefs and affidavits which establish a "prima facie case justifying a modification" before the party is entitled to an evidentia-

ry hearing. In enacting N.D.C.C. § 14–09–06.6(4), the Legislature recognized that an evidentiary hearing to determine a child's best interest was often a difficult and time-consuming process for the child and the parents. *See Hearing on SB 2167 before the Senate Judiciary Committee,* 55th N.D. Leg. Sess. (Jan. 21, 1997) (testimony of Sherry Mills Moore). Thus, the purpose of N.D.C.C. § 14–09–06.6(4) was to curtail the number of these hearings by bifurcating the test for modification of custody. *See id.* Therefore, under N.D.C.C. § 14–09–06.6(4), a trial court is to first determine, from the briefs and affidavits, if the moving party has established a "prima facie case justifying a modification." Only if a "prima facie case justifying a modification" is established, will a party be entitled to an evidentiary hearing to determine if modification is necessary to serve the best interest of the child. *See* N.D.C.C. § 14–09–06.6(4). In bifurcating these two steps, the Legislature hoped to not only prevent needless changes in custody, but to also spare children from the harmful effects of the custody battle itself. *See Hearing on SB 2167 before the Senate Judiciary Committee,* 55th N.D. Leg. Sess. (Jan. 21, 1997) (testimony of Sherry Mills Moore).

[¶ 49] The standards that a party must meet to establish a "prima facie case justifying a modification" are provided in subsections 5 and 6 of N.D.C.C. § 14–09–06.6. In the two-year period following the entry of an order establishing custody, a "prima facie case justifying a modification" is established if the moving party shows, through the submission of briefs and affidavits, willful interference with visitation, danger to the child's health, or a change in primary physical care of the child to the other parent for longer than six months. *See* N.D.C.C. § 14–09–06.6(4)–(5). If the moving party succeeds in showing one of these things, it is then entitled to an evi-

dentiary hearing to determine if "modification is necessary to serve the best interest of the child." *See* N.D.C.C. § 14–09–06.6(5). After the two-year period following the entry of a custody order, a "prima facie case justifying a modification" is established if the moving party shows, through the submission of briefs and affidavits, ·that, on the basis of facts which have arisen since the prior custody order or which were unknown to the court at the time of the prior order, a material change in circumstances of the child or the parties has occurred. *See* N.D.C.C. § 14–09–06.6(4), (6)(a). Only if the moving party succeeds in this showing will it be entitled to an evidentiary hearing to determine if "modification is necessary to serve the best interest of the child." *See* N.D.C.C. § 14–09–06.6(6)(b).

[¶ 50] When viewed in the context of its relationship to N.D.C.C. § 14–09–06.6(4), it is clear that the material change of circumstances requirement of N.D.C.C. § 14–09–06.6(6)(a) must require something more of parties than the mere presentation of new facts "that were unknown to the moving party at the time the divorce decree was entered," *see Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564. As discussed above, N.D.C.C. § 14–09–06.6(6)(a) provides the standard for determining if a party has established a "prima facie case justifying a modification" under N.D.C.C. § 14–09–06.6(4). The Legislature intended this standard to curtail the number of evidentiary hearings on the best interest factors. This standard would be of little, if any, help in reducing the number of best interest hearings if it could simply be met by a showing of new facts "that were unknown to the moving party at the time the divorce decree was entered." *Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564. Rather, it is clear the Legislature intended to require parties to meet the higher standard of showing that there has been a significant or important change of circumstances that has a negative impact on the well-being of the child.

[¶ 51] The second step, after the trial court has found a material change in circumstances, is to apply the best interest factors in N.D.C.C. § 14–09–06.2 gauged against the preference for stability of the custodial parent-child relationship. In *Blotske*, we described how a trial court is to apply the best interest factors:

We have said that in determining the best interests of a child in a change of custody proceeding, the trial court is to apply the factors in N.D.C.C. § 14–09–06.2. However, that application must be done within the constraints of a modification proceeding, as contrasted to an original custody proceeding. In an original custody proceeding, the fact finder is given free rein to weigh each factor as it deems fit, under no constraints (in the majority view) to assign one factor priority or give one factor more weight than another. A trial court making an original award of custody must determine the single issue of what is in the child's best interests. But a modification proceeding is different from an original custody award. In a modification proceeding, the best interests of the child must be gauged against the backdrop of the stability of the child's relationship with the custodial parent.

*Blotske*, 487 N.W.2d at 610 (citations omitted). It is this analysis that a trial court must apply in N.D.C.C. § 14–09–06.6(6)(b), "[t]he modification is necessary to serve the best interest of the child." Evidence that establishes the first step, a material change of circumstances, can also be considered by the trial court under N.D.C.C. § 14–09–06.2, the best interest factors, in the second step of the analysis. However, such evidence may be more significant in the court's consideration of one step of the

analysis than the other step. *See McDonough,* 539 N.W.2d at 317; *Alvarez,* 524 N.W.2d at 589.

[¶ 52] In summary, in my opinion, the proper method for analyzing a motion to change custody is, first, the moving party must submit affidavits and briefs in support of the motion. N.D.C.C. § 14–09–06.6(4). Based on these briefs and affidavits, the trial court must determine if the party has established a "prima facie case justifying a modification." *Id.* If the motion is brought in the two-year period following the entry of a custody order, a "prima facie case justifying a modification" is established by showing any of the three items listed under N.D.C.C. § 14–09–06.6(5). If the motion is brought after this two-year period, a "prima facie case justifying a modification" is established if the court finds a material change has occurred in the circumstances of the child or the parties. *See* N.D.C.C. § 14–09–06.6(4), (6)(a). A material change in circumstances is a significant or important change that has a negative impact on the well-being of the child. *See Alvarez,* 524 N.W.2d at 589; *Blotske,* 487 N.W.2d at 609. Only when a party meets the standards for a "prima facie case justifying a modification" is the court required to hold an evidentiary hearing to determine if "modification is necessary to serve the best interest of the child." *See* N.D.C.C. § 14–09–06.6(4), (6)(b). At that point, the best interest factors must be gauged against the preference for the stability of the custodial parent-child relationship. Such a construction of N.D.C.C. § 14–09–06.6 gives meaning to every word of the statute and furthers the Legislature's intent of curtailing changes in custody and providing stability to children.

### III

[¶ 53] I, therefore, respectfully concur in the result only.

[¶ 54] MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

NEUMANN, Justice, concurring specially.

[¶ 55] I write separately only to point out that while I have signed Justice Maring's concurrence, I agree with much of the majority opinion, including its result. In fact, with the exception of the majority's citation of *Wetch v. Wetch,* 539 N.W.2d 309 (N.D.1995), I see very little disagreement between the two opinions.

[¶ 56] I have joined Justice Maring's opinion because its careful analysis of our prior cases and N.D.C.C. § 14–09–06.6(6) has done much to clarify my understanding of the effect of the statute on our change-of-custody jurisprudence, as well as my understanding of the two-step analysis to be applied by our trial courts since the enactment of the statute. Prior to the enactment of the statute our cases were not always consistent in their articulation of the standard to be applied in deciding a motion to change custody. While, in my opinion, the statute makes no large changes in the standard to be met to change custody of a child, perhaps its new articulation of that standard will help us approach these unhappy cases with greater clarity and confidence.

[¶ 57] WILLIAM A. NEUMANN, J., concur.