2013 ND 103

**Leslie Wade MILLER, Plaintiff and Appellant**

v.

**Jenny Lynn MILLER, n/k/a Jenny Sailer, Defendant and Appellee.**

**No. 20120424.**

Supreme Court of North Dakota.

June 19, 2013.

Lynn M. Boughey, Bismarck, N.D., for plaintiff and appellant.

Sherry Mills Moore, Bismarck, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Leslie Wade Miller appeals from an order denying without an evidentiary hearing his motion to change the primary residential responsibility for his son, B.P.M., from Jenny Lynn Miller, now known as Jenny Sailer, to himself. We affirm, concluding the district court did not err in ruling Miller failed to establish a prima facie case justifying a change of primary residential responsibility.

I

[¶ 2] Miller and Sailer were divorced in 2003. Under the parties' agreement, Sailer was granted primary residential responsibility for the couple's two children and Miller was granted parenting time. In 2007 Miller brought a motion to change the primary residential responsibility for B.P.M., the oldest child. Miller alleged that B.P.M., "a special needs child," was not happy living with Sailer and that Sailer had improperly taken B.P.M. off medication, removed him from special education classes, moved several times, and lived with a boyfriend. The district court denied the motion, concluding Miller had not established a prima facie case to require an evidentiary hearing.

[¶ 3] In March 2012, Miller again moved to change primary residential responsibility for B.P.M., who was then 15 years old and an eighth-grade student. In support of the motion, Miller presented his affidavit, B.P.M.'s affidavit, and several of B.P.M.'s report cards. Many allegations mirrored those made in support of the 2007 motion. Miller also alleged Sailer had arguments with B.P.M., had contacted law enforcement about his behavior, and had taken him to juvenile youth services and threatened to send him to Dakota Boys Ranch. Miller alleged Sailer interfered with his relationship with B.P.M., did not provide for B.P.M.'s needs, and B.P.M.'s poor school performance improved during a two-month period he lived with Miller. B.P.M. alleged he argued with Sailer and stated he preferred to live with Miller. In response to the motion, Sailer presented her affidavit and several of B.P.M.'s class grade reports. Sailer provided details to counter or explain the allegations made against her and objected to hearsay statements contained in the documents filed by Miller.

[¶ 4] The district court denied Miller's motion without holding an evidentiary hearing, concluding the affidavits and other evidence presented in support of the motion did not establish a prima facie case justifying a change of primary residential responsibility. The court interpreted the

"central theme" of the motion to be "that B.P.M., now age 15, does not agree with some of the restrictions and requirements Jenny imposes upon him, and that B.P.M. has stated a preference to live with Leslie." The court concluded "the conduct identified in the opposing affidavits suggests that he is not of sufficient maturity for the Court to give substantial weight to his preference."

## II

[¶ 5] Miller argues the district court erred in ruling he failed to establish a prima facie case to support a change of primary residential responsibility.

[¶ 6] Under N.D.C.C. § 14–09–06.6(6), a court may modify primary residential responsibility after a two-year period following the date of entry of an order establishing primary residential responsibility if the court finds "[o]n the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties," and the "modification is necessary to serve the best interest of the child." A motion must be denied without an evidentiary hearing "unless the court finds the moving party has established a prima facie case justifying a modification." N.D.C.C. § 14–09–06.6(4). In *Thompson v. Thompson*, 2012 ND 15, ¶ 6, 809 N.W.2d 331, this Court said:

> Whether the moving party established a prima facie case is a question of law, which is reviewed de novo on appeal. *Wolt v. Wolt*, 2011 ND 170, ¶ 9, 803 N.W.2d 534. The moving party has the burden to establish a prima facie case justifying modification. *Ehli v. Joyce*, 2010 ND 199, ¶ 7, 789 N.W.2d 560. This Court has said:
>
> > A prima facie case is a bare minimum and requires facts which, if proved at

an evidentiary hearing, would support a change of custody that could be affirmed if appealed. When determining whether a prima facie case has been established, a court may not weigh conflicting allegations in affidavits. However, allegations alone do not establish a prima facie case, affidavits must include competent information, which usually requires the affiant to have first-hand knowledge, and witnesses are generally not competent to testify to suspected facts. Affidavits are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts.

*Id.* (citations omitted). A material change in circumstances is an important new fact that was unknown at the time of the prior custody decision. *Id.* at ¶ 8. A material change in circumstances may exist when there has been an attempt to alienate a child's affection for a parent or when there has been a frustration of visitation. *Id.* A significant change in the actual arrangement for primary residential responsibility from the arrangement contemplated by the prior order may also be a material change in circumstances. *See id.* at ¶ 10.

A mature child's reasonable preference to live with a particular parent may constitute a material change in circumstances to justify a change in primary residential responsibility if there are persuasive reasons for that preference. *See, e.g., Frison v. Ohlhauser*, 2012 ND 35, ¶ 7, 812 N.W.2d 445; *Lechler v. Lechler*, 2010 ND 158, ¶ 11, 786 N.W.2d 733.

[¶ 7] Some of the hearsay in Miller's affidavit relates to his allegations about Sailer taking B.P.M. off of medications, Sailer's living arrangements, and Sailer's educational choices for B.P.M.

These allegations were also contained in an affidavit filed in Miller's unsuccessful 2007 attempt to change the primary residential responsibility for B.P.M. " 'Under res judicata principles, it is inappropriate to re-hash issues which were tried or could have been tried by the court in prior proceedings.' " *Laib v. Laib*, 2010 ND 62, ¶ 10, 780 N.W.2d 660 (quoting *Wetch v. Wetch*, 539 N.W.2d 309, 311 (N.D.1995)). Consequently, Miller's allegations raised and rejected by the district court in 2007 cannot serve as a basis to support his motion to change the primary residential responsibility for B.P.M. in these proceedings.

[¶ 8] Miller contends a de facto change of primary residential responsibility occurred when, with Sailer's consent, B.P.M. lived with him for a two-month period from October 2011 until December 2011. Although a "significant change in the actual arrangement for primary residential responsibility from the arrangement contemplated by the prior order may also be a material change in circumstances," *Thompson*, 2012 ND 15, ¶ 6, 809 N.W.2d 331, N.D.C.C. § 14–09–06.6(3)(c) suggests that a de facto change in primary residential responsibility cannot occur unless the "primary residential responsibility for the child has changed to the other parent for longer than six months." The two-month period alleged here is insufficient as a matter of law. *Cf. Ehli v. Joyce*, 2010 ND 199, ¶¶ 2, 10, 789 N.W.2d 560 (where judgment allowed parties to share time equally with child, party's allegation that she actually had child 95 percent of the time raised a prima facie case that there was more than a minor variance from the initial judgment).

[¶ 9] Miller argues that his life has "improved" while Sailer's life has "declined," and Sailer has failed to provide for B.P.M.'s needs. In his affidavit, Miller asserted "[m]y life has improved greatly" and "I have a more steady job," while "Jenny's life has declined, particularly in regards to her relationship with BPM" because "they argue constantly." B.P.M. in his affidavit complained that "my mom and I argued all the time." Miller further asserted "I have always had to provide boots and clothing throughout the years and when BPM came to live with me I had to buy him new everything ... because he came with the clothes on his back." Miller's assertion about the improvements in his life is a conclusory allegation, *see, e.g., Sweeney v. Kirby*, 2013 ND 9, ¶ 5, 826 N.W.2d 330, and in any event would not by itself be sufficient to show a significant change in circumstances. *See, e.g., Interest of Thompson*, 2003 ND 61, ¶ 7, 659 N.W.2d 864. Furthermore, arguments between teenagers and their parents are common and are to be anticipated in the normal course of parenting. The alleged arguments between B.P.M. and Sailer cannot be considered a material change in circumstances. Miller's allegation that Sailer does not send, or B.P.M. does not bring, enough clothing when Miller exercises parenting time does not indicate a failure on the part of Sailer to provide for B.P.M.'s needs in Sailer's home.

[¶ 10] Miller argues Sailer is a detriment to B.P.M.'s physical or emotional health or development because "Jenny called the cops," she "took him to the Dickinson Juvenile Youth Program," and she "has threatened to send him to Dakota Boy's Ranch." A parent responsible for a child's care and supervision may discipline the child and may use reasonable force to do so. *See, e.g., Rudnick v. Rode*, 2012 ND 167, ¶ 23, 820 N.W.2d 371. Sailer's attempts to discipline B.P.M. through legal means do not raise a prima facie case that she is a detriment to his physical or emotional health or development.

[¶ 11] Miller argues Sailer is a detriment to B.P.M.'s education and development because B.P.M. began "doing much better" in school during the two-month period he lived with Miller. B.P.M. agreed that "[s]chool got a lot better and I did better when I lived with my dad." However, B.P.M.'s report cards submitted by Miller do not indicate any marked improvement in B.P.M.'s school performance during this period of time. The party opposing a motion to change primary residential responsibility can rebut a prima facie case by presenting evidence that conclusively shows the allegations of the moving party have no credibility or are, on their face, insufficient to justify modification. *Wolt v. Wolt*, 2011 ND 170, ¶ 9, 803 N.W.2d 534. Individual class grade reports submitted by Sailer establish that there was no particular pattern to B.P.M.'s class grades, which ranged from As to Fs before, during and after B.P.M. stayed with Miller. Rather, the only consistency in B.P.M.'s grades is their random inconsistency. Miller's argument is without merit.

[¶ 12] Miller argues the district court erred in not giving substantial weight to B.P.M.'s preference to live with him, and at the very least, erred in failing to hold a hearing to determine if B.P.M. was sufficiently mature to express a preference. We agree that, as children mature, more weight should be given to their preferences if there are persuasive reasons for their preferences. *See Volz v. Peterson*, 2003 ND 139, ¶ 11, 667 N.W.2d 637; *Kelly v. Kelly*, 2002 ND 37, ¶ 32, 640 N.W.2d 38. However, the evidence submitted in this case does not permit an inference that B.P.M. is a mature child. First, B.P.M.'s school grades demonstrate that although he is capable of receiving As in his school work, he most often receives Ds and Fs. The grade history reflects that

as a teenager B.P.M. is making choices about his school performance that reflect a lack of maturity.

[¶ 13] Second, Miller relies on B.P.M.'s affidavit in which B.P.M. states:

1. I have wanted to live with my dad for many, many years. Anytime I asked to stay with dad more the answer was always no. When I would ask why, mom would say, because.

   . . . .

5. I do not want to live with my mom. I want to live with my dad. Living with my dad was less stressful and made it easier to cope at school. When I lived with dad the only thing I worried about every day was going back to my moms [sic]. At mom's I don't ever get the things ever that I want or ask for and mom always says you'll get what I decide.

We agree with the district court that the reason for B.P.M.'s preference is he "does not agree with some of the restrictions and requirements Jenny imposes upon him." This is not a persuasive reason for a child's preference to live with the other parent. The court appears to have improperly relied on the whole content of Sailer's affidavit to determine B.P.M. was not sufficiently mature to give weight to his preference because a court may not weigh conflicting allegations in affidavits. *See Thompson*, 2012 ND 15, ¶ 6, 809 N.W.2d 331. But reliance on Sailer's affidavit was unnecessary. The evidence presented by Miller shows B.P.M. is immature and has no persuasive reason for his preference to live with Miller. The court was not required to hold a hearing to determine B.P.M.'s maturity.

[¶ 14] It is unnecessary to address other arguments raised because they are without merit or are unnecessary to the decision. Miller's allegations, if proved at an evidentiary hearing, would not support

a change of primary residential responsibility. We conclude the district court did not err in ruling Miller failed to establish a prima facie case justifying a change of primary residential responsibility.

### III

[¶ 15]   The order is affirmed.

[¶ 16]   GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.